(738 P.2d 876)

No. 59,741

STATE OF KANSAS, *Appellant*, v. CHARLES L. DOEDEN, *Appellee*.

Petition for review denied October 6, 1987.

Opinion filed June 25, 1987.

*Gene Porter*, county attorney, *Deborah Wilkinson*, assistant county attorney, and *Robert T. Stephan*, attorney general, for appellant.

*Dennis J. Keenan*, of Keenan Law Firm, P.A., of Great Bend, for appellee.

Before MEYER, P.J., BRAZIL and DAVIS, JJ.

BRAZIL, J.: This is an interlocutory appeal filed by the State from the trial court's order suppressing the results of an alcohol test of the blood of Charles L. Doeden done with his consent.

Doeden is charged in Barton County District Court with one count of driving on a suspended license, K.S.A. 1986 Supp. 8-262, and one count of driving under the influence of alcohol and/or drugs. K.S.A. 1986 Supp. 8-1567. He filed a motion to suppress the results of a blood alcohol test (BAT) that was performed on him.

At the suppression hearing Bruce Green, a deputy sheriff in Barton County, testified he was sent to investigate a one-car accident at about one-thirty in the morning on January 11, 1986. Ambulance attendants already on the scene were helping a man into their ambulance. The man told Green that his name was "Chuck," and he had been alone while driving the car that had run into a bridge structure. Green could see the man was injured and also noticed the odor of alcohol on his breath. The man was

taken to Central Kansas Medical Center, and Green followed him there.

The doctor at the medical center allowed Green to question the man. Green discovered the man had a driver's license in his wallet and from that learned his name was Charles Doeden. Green told Doeden he could smell alcohol on Doeden's breath, and Doeden admitted he had been drinking whiskey and beer. Without arresting Doeden, Green requested a BAT, and Doeden indicated he understood, but made no objection. Green told Doeden he would take the blood, send it to the State for analysis, and charge Doeden with DUI if the results came back .10 or higher. Doeden said he understood. A nurse had Doeden sign a hospital consent form for the blood withdrawal.

Green admitted he did not have Doeden complete an implied consent, or *Standish*, form. Green testified on direct examination that he did not go over the form because he felt it would take too long and interfere with Doeden's treatment. On cross-examination, Green admitted his report filed shortly after the events stated he did not use the implied consent form because he did not feel Doeden would understand the questions due to his condition, described by Green as "semi-conscious." The nurse who drew the blood sample testified that she read the hospital's consent form to Doeden by pointing the words out to him as she read them, and she believed he understood the form or she would not have had him sign it. The form states that Doeden gives consent for hospital staff to draw blood from him for testing for blood alcohol content and agrees the hospital will incur no liability to him by taking the sample.

At the close of the hearing, the trial judge said:

"Well, seems we've got a consent and we have an implied consent advisory procedure which was not followed because the person was not coherent enough to understand it, yet the nurse on duty felt that he was coherent to understand. The Court is going to order the suppression for failure to have the defendant under arrest at the time of the withdrawal of the blood."

The State's first issue regarding our jurisdiction to hear this appeal under K.S.A. 22-3603 has been conceded by Doeden and need not be addressed. The remaining issues involve the construction of K.S.A. 1985 Supp. 8-1001; the events in this case occurred before the effective date of the 1986 amendment of this statute.

The State contends the trial court erred in suppressing the test results because Doeden was not under arrest at the time of the withdrawal of the blood. We agree.

K.S.A. 1985 Supp. 8-1001(b) provided that tests to determine the presence of alcohol or drugs in a person's blood, breath, urine, or other bodily substances

"shall be administered when a law enforcement officer has reasonable grounds to believe the person was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs, or both, and one of the following conditions exists: (1) The person has been arrested or otherwise taken into custody for any offense involving operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both, in violation of a state statute or a city ordinance; or *(2) the person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury or death.*" (Emphasis added.)

Clearly the test was authorized under subdivision (2).

The final issue raised on appeal is whether a trial court must suppress the results of a BAT done with the defendant's consent because the law enforcement officer requesting the test failed to provide the defendant with the notices listed in K.S.A. 1985 Supp. 8-1001(f)(1).

As noted by the State in its brief, the trial court did not base its decision to suppress the BAT on Green's failure to provide Doeden with the notices contained in K.S.A. 1985 Supp. 8-1001(f)(1). However, the question was raised by Doeden's attorney at the suppression hearing; therefore, we will consider it now.

Doeden argues that the taking of his blood violated the Fifth and Sixth Amendments and that the results of the BAT must be suppressed to protect his constitutional rights. We disagree.

In *State v. Compton*, 233 Kan. 690, 664 P.2d 1370 (1983), the court discussed the application of the Fifth Amendment to K.S.A. 8-1001 and followed *South Dakota v. Neville*, 459 U.S. 553, 562-64, 74 L. Ed. 2d 748, 103 S. Ct. 916 (1983), by holding:

"The taking or the refusal to take the test is an option provided by the legislature. Both the results of the test, if taken, or the refusal to take it, if declined, are admissible in evidence, and the admission of such evidence does not offend the Fifth Amendment privilege against self-incrimination or the right to due process." 233 Kan. at 694.

The court then went on to say: "Since the refusal is not the

exercise of a constitutional right, but merely a matter of grace bestowed by the legislature, we hold that there is no requirement that an explanation of the accused's right to refuse the test or of the consequences of that refusal be given." 233 Kan. at 695. Thus, the Fifth Amendment poses no barrier to admission of the BAT results in this case.

Doeden's Sixth Amendment claim, presumably of a right to counsel prior to submitting to the blood alcohol test, has been rejected by our supreme court. *State v. Bristor*, 236 Kan. 313, 691 P.2d 1 (1984); *Standish v. Department of Revenue*, 235 Kan. 900, 683 P.2d 1276 (1984).

Since admission of the BAT results is not barred by the Constitution, the question becomes whether K.S.A. 1985 Supp. 8-1001 barred their admission.

"At the time a test or tests are requested under this section, the person shall be given oral and written notice that: (A) There is no right to ,consult with an attorney regarding whether to submit to testing; (B) refusal to submit to testing will result in six months' suspension of the person's driver's license; (C) refusal to submit to testing may be used against the person at any trial on a charge involving driving while under the influence of alcohol or drugs, or both; (D) the results of the testing may be used against the person at any trial on a charge involving driving while under the influence of alcohol or drugs, or both; and (E) after the completion of the testing, the person has the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from hospitals, medical laboratories and physicians. After giving the foregoing information, a law enforcement officer shall again request the person to submit to the test or tests. The selection of the test or tests shall be made by the officer. If the person refuses to take and complete a test as requested, additional testing shall not be given and the person's driver's license shall be subject to suspension as provided in K.S.A. 8-1002 and amendments thereto. The person's refusal shall be admissible in evidence against the person at any trial arising out of the alleged operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both." K.S.A. 1985 Supp. 8-1001(f)(1).

Doeden argues the word "shall" has no other meaning but that the law enforcement officer must follow what is set forth within the statute. If so, Green clearly violated the statute by failing to give Doeden the notices listed in K.S.A. 1985 Supp. 8-1001(f)(1). We disagree. "Shall" is sometimes held to be directory and not mandatory. *State v. Costa*, 228 Kan. 308, 315, 613 P.2d 1359 (1980); *State v. Turner*, 223 Kan. 707, 708, 576 P.2d 644 (1978).

As indicated by the court in *Paul v. City of Manhattan*, 212 Kan. 381, 385, 511 P.2d 244 (1973), statutory provisions using the word "shall" might be held not mandatory where (1) not accompanied by negative words indicating the specific acts can be done in no other manner; or (2) no consequences of noncompliance are included. K.S.A. 1985 Supp. 8-1001 stated no consequences of noncompliance with (f)(1).

The general rules of statutory construction have been recently restated by our supreme court:

"Where the interpretation of a statute is a question of law, it is the function of the court to interpret the statute to give it the effect intended by the legislature. [Citation omitted.] The purpose and intent of the legislature governs when that intent can be ascertained from the statute. [Citation omitted.] Words in common usage are to be given their natural and ordinary meaning in arriving at a proper construction of the statute. [Citation omitted.] When a statute is susceptible of more than one construction, it must be construed to give expression to its intent and purpose, though such construction is not within the strict literal interpretation of the statute. [Citation omitted.]" *Farmers Co-op v. Kansas Bd. of Tax Appeals*, 236 Kan. 632, 634-35, 694 P.2d 462 (1985).

We note that K.S.A. 1985 Supp. 8-1001(b) stated that the BAT "shall be administered" when the officer had reasonable grounds to believe the person committed DUI and the person either (1) was in custody or (2) was involved in a motor vehicle accident, yet (f)(1) stated in part that "[i]f the person refuses to take and complete a test as requested, additional testing shall not be given." If "shall" meant that the test must be administered, then necessarily there was no right to refuse it. Since the statute did permit a refusal, "shall" in (b) could only be directory. Since the legislature used a directory "shall" once in K.S.A. 1985 Supp. 8-1001, it does not seem unreasonable to think it might have done so more than once.

A consideration of some relevant cases decided shortly before the 1985 amendments and the purposes of the implied consent statute as expressed in those cases leads to the conclusion the legislature intended the language in (f)(1) to be directory only.

*Standish v. Department of Revenue*, 235 Kan. 900, involved the administrative suspension of a driver's license for refusal to submit to a BAT. 235 Kan. at 901. Departing from the issue raised by the appealing Department of Revenue, the court concluded the driver's refusal was reasonable because he had just been

given the *Miranda* warnings which included the right to have an attorney, and he refused to submit to the test until he had exercised that right. 235 Kan. at 903-05. The court gave the following advice to police officers:

"In the future, when an officer in making a DUI arrest gives the suspect the *Miranda* warnings, he or she should also tell the person arrested:

" 'Kansas law provides that a person who drives a motor vehicle shall be deemed to have given consent to submit to a chemical test of breath or blood, to determine the alcoholic content of the person's blood, whenever the person is arrested or taken into custody for operating a motor vehicle when under the influence of alcohol.

" 'Your right to consent or refuse to take a chemical test is not a constitutional right. You have no constitutional right to consult with an attorney as to whether or not you will take the test.'

"Also, and although not required to do so by our earlier cases, the officer could well add:

" 'If you refuse to take the test, the fact of your refusal can be used against you in any trial for driving under the influence of alcohol.

" 'Also, if you refuse to take the test, your driver's license will probably be suspended for a period of not less than 120 days and not more than one year.' "
235 Kan. at 904-05.

By giving this warning, the police officer could avoid the result reached in *Standish*, and the driver's license could properly be suspended. A comparison of these suggestions and K.S.A. 1985 Supp. 8-1001(f)(1) shows that subdivisions (A), (B), and (C) of the statute were drawn from the *Standish* case. The legislature presumably intended those portions of this statute to avoid the *Standish* result.

Four months after *Standish*, the court decided there was no Sixth Amendment right to counsel to help a driver decide whether to take a BAT. *State v. Bristor*, 236 Kan. 313. In the course of that decision, the court explained the aim of K.S.A. 8-1001 as it stood at that time.

"The very purpose of the implied consent law (K.S.A. 8-1001) is to coerce a motorist suspected of driving under the influence to 'consent' to chemical testing, thereby allowing scientific evidence of his blood alcohol content to be used against him in a subsequent prosecution for that offense. [Citation omitted.] For drivers who refuse, the purpose of the statute is to provide an effective means short of physical force to overcome the refusal. *State v. Garner*, 227 Kan. 566, 571-72, 608 P.2d 1321 (1980). The nonphysical means consist of the statutory penalties of license revocation and the admission into evidence in a DUI proceeding of the fact of the refusal. K.S.A. 8-1001(c). Under *Standish*, the

arrested defendant is to be informed of these consequences. This is a departure from our earliest cases. [Citations omitted.] Thus, the consent envisioned by the statute is to be implied and if submission is not forthcoming it is to be coerced by knowledge and fear of adverse consequences." 236 Kan. at 319.

Coercion still seems to have been the main purpose of K.S.A. 1985 Supp. 8-1001 after the 1985 amendments. Given this purpose, the notices contained in subsection (f)(1) became important only after the driver refused to consent to the BAT, since only then was coercion necessary. This conclusion is bolstered by K.S.A. 1985 Supp. 8-1002, which established the procedure to be followed where a driver refused the BAT. The driver's license would be automatically suspended unless the driver requested a hearing. If such a request was made,

"The scope of the hearing shall be limited to whether: (1) A law enforcement officer had reasonable grounds to believe the person was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs, or both; (2) the person was in custody or arrested for an alcohol or drug related offense or was involved in a motor vehicle accident or collision resulting in property damage, personal injury or death; (3) at the time of the request for a test the law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001 and amendments thereto; and (4) the person refused to take a test as requested by a law enforcement officer." K.S.A. 1985 Supp. 8-1002(d).

Subdivision (3) is the only other reference we have found in the statutes to K.S.A. 1985 Supp. 8-1001(f)(1). Though it did not literally say as much, it seems clear subdivision (3) indicated that *Standish* could be followed where the additional warnings were not given, and the driver's license would not be suspended in such cases because the refusal to consent to the BAT was reasonable. Thus, the notices were required not to protect the driver's rights but to ensure the State would obtain either a BAT or license suspension. In our case, however, even had Doeden refused the test, *Standish* would probably not help him because, as he did not receive the *Miranda* warnings, he could not have been confused by them.

Subdivisions (D) and (E) of K.S.A. 1985 Supp. 8-1001(f)(1), however, appear to make the subsection something of an informed consent statute. That is, the driver was not merely to be coerced into consenting to a BAT as *Bristor* stated, but was to be informed of (1) the consequences of a consent and (2) a right to

have additional tests done immediately to guard against errors in the State's BAT. We believe that most, if not all, drivers would realize without the notice in subdivision (D) that the BAT results would be used against them at trial if they were charged with DUI or other offenses.

Subdivision (E), on the other hand, is more difficult to explain except as an attempt to help drivers understand the choices they had to make. K.S.A. 1985 Supp. 8-1004's provision that the BAT must be suppressed if the officer refused to allow the driver to have his or her own tests done would seem to indicate that the K.S.A. 1985 Supp. 8-1001(f)(1) notices were mandatory since the driver probably would not know of this right if not given the notice. However, two other factors lead us to conclude this subdivision did not make the giving of the notices mandatory. First, K.S.A. 1985 Supp. 8-1004 contained the same penalty as before the 1985 amendments, when the legislature had not yet indicated any notices ought to be given. Second, K.S.A. 1985 Supp. 8-1001(a) provided that tests may be administered upon persons who were dead or unconscious in "the manner provided by this section." Surely oral and written notice was not mandated in those cases.

Based on these considerations and given the public outcry against drunk driving, we conclude that the legislature intended to ensure the State would obtain either a BAT or license suspension, not to ensure that the driver was fully informed of the consequences of his response to the BAT request.

Reversed and remanded for further proceedings.

MEYER, J., dissenting: I disagree with the majority because I am of the opinion that K.S.A. 1985 Supp. 8-1001 mandates the giving of oral and written notice as therein provided. The statute expressly states as follows:

"At the time a test or tests are requested under this section, the person *shall* be given oral and written notice 'that: (A) There is no right to consult with an attorney regarding whether to submit to testing; (B) refusal to submit to testing will result in six months' suspension of the person's driver's license; (C) refusal to submit to testing may be used against the person at any trial on a charge involving driving while under the influence of alcohol or drugs, or both; (D) the results of the testing may be used against the person at any trial on a charge involving driving while under the influence of alcohol or drugs, or both; and (E)

after the completion of the testing, the person has the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from hospitals, medical laboratories and physicians. After giving the foregoing information a law enforcement officer *shall* again request the person to submit to the test or tests. The selection of the test or tests shall be made by the officer. If the person refuses to take and complete a test as requested, additional testing *shall not* be given and the person's driver's license *shall* be subject to suspension as provided in K.S.A. 8-1002 and amendments thereto. The person's refusal *shall* be admissible in evidence against the person at any trial arising out of the alleged operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both." K.S.A. 1985 Supp. 8-1001(f)(1). (Emphasis added.)

The majority has concluded that the provisions of the foregoing statute are directory only. I do not agree. First, I call attention to the fact that the statute is replete with "shalls." For example, it begins by stating that "the person *shall* be given oral and written notice". Then, after stating the various information that the officer must give the person involved, it is directed that the officer "*shall* again request the person to submit to the tests or tests". The statute states that the tests *shall* be made by the officer. Furthermore, if a person refuses to take and complete a test as requested, additional testing "*shall not* be given and the person's driver's license *shall* be subject to suspension." Further, the statute provides that the person's refusal *shall* be admissible in evidence against the person. All these mandatory "shalls" are specific.

Next, the majority apparently concludes that *Paul v. City of Manhattan*, 212 Kan. 381, 511 P.2d 244 (1973), is authority to the effect that the word "shall" does not in fact mean shall. K.S.A. 1985 Supp. 8-1001 is a criminal statute, and the law is most clear that such a statute must be liberally construed in favor of an accused and strictly construed against the State. *State v. Zimmerman & Schmidt*, 233 Kan. 151, 155, 660 P.2d 960 (1983); *State ex rel. Stephan v. Pepsi-Cola Gen'l Bottlers, Inc.*, 232 Kan. 843, 846, 659 P.2d 213 (1983). The majority then applies the following rule from *Paul*, which is summarized in Syl. ¶ 2 of the court's opinion:

"Factors which would indicate that a statute or ordinance is mandatory are: (1) the presence of negative words requiring that an act shall be done in no other manner or at no other time than that designated, or (2) a provision for a penalty or other consequence of noncompliance."

The majority contends that because K.S.A. 1985 Supp. 8-1001 does not contain a penalty for noncompliance, the word "shall" is merely directory and not mandatory. True, there is no express penalty outlined in 8-1001 *for the failure of the law enforcement officer to give the information*; however, I fail to see how the absence of this factor alters an otherwise unambiguous statute. The majority's disregard of the express language and intent of the legislative act renders it virtually nugatory.

In addition to this problem that I find with the majority's position, I take special note of the valuable rights that are outlined under subdivisions A, B, C, D, and E of K.S.A. 1985 Supp. 8-1001, as hereinabove set out. With these rights in mind, I refer the reader to Syl. ¶ 1 of *Paul,* which states:

"In determining whether a legislative provision is mandatory or directory, it is a general rule that where strict compliance with the provision is essential to the preservation of the rights of parties affected and to the validity of the proceeding, the provision is mandatory, but where the provision fixes a mode of proceeding and a time within which an official act is to be done, and is intended to secure order, system and dispatch of the public business, the provision is directory."

Certainly compliance with the statute is important in preserving the rights outlined in K.S.A. 1985 Supp. 8-1001(f).

But there is yet another reason why I differ, specifically, with the majority. In a careful study of K.S.A. 1985 Supp. 8-1001, I can reach no conclusion but that that statute is ultimately clear and not ambiguous. The statute thus means what it says and must be interpreted according to the Legislature's language. The majority has undertaken to define and explain what they feel the Legislature means by this statute but, again the law is most clear that we do not have the prerogative of looking behind the legislative scenes to interpret what the Legislature meant in enacting a statute which is itself clear and unambiguous on its face. "Where a statute is plain and unambiguous, this court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be." *State v. Sleeth,* 8 Kan. App. 2d 652, 655, 664 P.2d 883 (1983) (quoting *Arduser v. Daniel International Corp.,* 7 Kan. App. 2d 225, Syl. ¶ 1, 640 P.2d 329, *rev. denied* 231 Kan. 799 [1982]). We are not called upon to address the wisdom, or lack thereof, of enacting the statute before us.

I would affirm the learned trial judge.