No. 60,419

MAURICE G. BARNHART, *Appellant*, v. KANSAS DEPARTMENT OF REVENUE, *Appellee*.

(755 P.2d 1337)

Opinion filed June 3, 1988.

*Michael V. Foust*, of Goodland, argued the cause and was on the briefs for appellant.

*James G. Keller*, of the Kansas Department of Revenue, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

HOLMES, J.: Maurice G. Barnhart appeals from a decision of the Thomas County District Court which upheld the suspension of his driver's license by the appellee Kansas Department of Revenue, Division of Vehicles (Department). Appellant's driver's license was suspended pursuant to K.S.A. 8-1001 *et seq.* for refusal to take a breath alcohol test. The Court of Appeals upheld the district court ruling in an unpublished opinion filed December 23, 1987. We granted appellant's petition for review.

The facts are not in dispute. On January 24, 1986, appellant was involved in a two-car collision. The other vehicle was driven

by appellant's son. Following the collision, appellant was located at a nearby hospital where he was interviewed by a deputy sheriff. The officer administered field sobriety tests to appellant and then arrested him for driving under the influence of alcohol (K.S.A. 1985 Supp. 8-1567).

The officer transported appellant to the sheriff's office and asked him to undergo a breathalyzer test. Appellant refused, stating that he was under stress and that he believed such testing would violate his constitutional rights. The officer proceeded to give appellant oral and written notice in accordance with procedures adopted by the Department for compliance with K.S.A. 1985 Supp. 8-1001(f)(1). Appellant again refused to submit to testing and, pursuant to K.S.A. 1985 Supp. 8-1002, the officer initiated procedures for suspension of appellant's driver's license. Appellant's plastic driver's license had been taken from him by the officer at the hospital. At the sheriff's office he was given a notice of suspension and a paper temporary license effective for 15 days, as provided by K.S.A. 1985 Supp. 8-1002(b).

The deputy sheriff forwarded a copy of the notice of suspension to the Division of Vehicles. Appellant submitted a timely written request for an administrative hearing pursuant to K.S.A. 1985 Supp. 8-1002(d) and his temporary license was extended for 45 days. At the administrative hearing, the examiner determined that the appellant's license should be suspended. Appellant sought and obtained *de novo* review by the district court as provided by K.S.A. 1985 Supp. 8-259. The district court upheld the administrative determination and granted summary judgment to the Department.

The first issue is whether the suspension of appellant's driver's license for refusing to take a breath alcohol test (BAT) must be invalidated, due to an alleged deficiency in the oral and written notice given to appellant. K.S.A. 1985 Supp. 8-1001(f)(1) provides:

"(f)(1) At the time a test or tests are requested under this section, the person shall be given oral and written notice that: (A) There is no right to consult with an attorney regarding whether to submit to testing; (B) refusal to submit to testing will result in six months' suspension of the person's driver's license; (C) refusal to submit to testing may be used against the person at any trial on a charge involving driving while under the influence of alcohol or drugs, or both; (D) the

results of the testing may be used against the person at any trial on a charge involving driving while under the influence of alcohol or drugs, or both; and *(E)* *after the completion of the testing, the person has the right to consult with an* *attorney and may secure additional testing, which, if desired, should be done as* *soon as possible and is customarily available from hospitals, medical labora-* *tories and physicians.* After giving the foregoing information, a law enforcement officer shall again request the person to submit to the test or tests. The selection of the test or tests shall be made by the officer. If the person refuses to take and complete a test as requested, additional testing shall not be given and the person's driver's license shall be subject to suspension as provided in K.S.A. 8-1002 and amendments thereto. The person's refusal shall be admissible in evidence against the person at any trial arising out of the alleged operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both." (Emphasis added.)

It is undisputed that appellant was given oral and written notice as set forth on preprinted forms developed by the Department specifically for that purpose. Appellant contends, however, that the Department's form notice was deficient as to the information required by K.S.A. 1985 Supp. 8-1001(f)(1)(E). The pertinent part of the notice relating to subsection (E) of the statute and given to appellant read:

"If you decide to submit to testing, after testing is completed you have the right to consult with an attorney and you may have additional testing done as soon as possible and as available."

The Court of Appeals in affirming the suspension relied upon its decision in *State v. Doeden*, 12 Kan. App. 2d 245, 738 P.2d 876, *rev. denied* 242 Kan. 904 (1987). In *Doeden* the court held that the notice provisions of K.S.A. 1985 Supp. 8-1001(f) were merely directory and not mandatory. In the present case, the Court of Appeals, relying upon *Doeden*, summarily disposed of appellant's claim that the notice provisions were mandatory and we granted review in order to further consider the holding in *Doeden*. The Court of Appeals also found that, in any event, the notice given in the present case was in substantial compliance with the statute.

In *Doeden* the arresting officer failed to give the defendant the notices listed in K.S.A. 1985 Supp. 8-1001(f)(1). A majority of the panel of the Court of Appeals, after discussing the intent of the legislature, found the notice provisions of the statute to be directory. Judge Meyer, in a dissenting opinion, reviewed the language and purpose of the statute, concluded the statute was mandatory, and then stated:

"But there is yet another reason why I differ, specifically, with the majority. In a careful study of K.S.A. 1985 Supp. 8-1001, I can reach no conclusion but that that statute is ultimately clear and not ambiguous. The statute thus means what it says and must be interpreted according to the Legislature's language. The majority has undertaken to define and explain what they feel the Legislature means by this statute but, again the law is most clear that we do not have the prerogative of looking behind the legislative scenes to interpret what the Legislature meant in enacting a statute which is itself clear and unambiguous on its face. 'Where a statute is plain and unambiguous, this court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be.' *State v. Sleeth*, 8 Kan. App. 2d 652, 655, 664 P.2d 883 (1983) (quoting *Arduser v. Daniel International Corp.*, 7 Kan. App. 2d 225, Syl. ¶ 1, 640 P.2d 329, *rev. denied* 231 Kan. 799 [1982]). We are not called upon to address the wisdom, or lack thereof, of enacting the statute before us." 12 Kan. App. 2d at 254.

The clear language of the statute indicates that the legislature intended to ensure that a person arrested for driving under the influence was made aware, by the required notice procedure, of his statutory rights. Those rights include the right to obtain independent testing of his blood alcohol level following testing by or under the direction of a law enforcement officer. K.S.A. 1985 Supp. 8-1004 both establishes this right to an independent test, and enforces compliance by law officers. It provides that if the law enforcement officer refuses to permit the person tested to obtain such additional testing, the results of the test administered under the direction of the officer are inadmissible in evidence.

K.S.A. 1985 Supp. 8-1001(f)(2) states in part:

"It shall not be a defense to any prosecution [for driving under the influence] . . . that the person did not understand the written or oral notice *required* by this section . . . ." (Emphasis added.)

See also similar language in K.S.A. 1985 Supp. 8-1002(c)(1)(B) and 8-1002(d)(3).

The statute in question clearly requires that certain procedures shall be followed and certain notices shall be given to a defendant arrested for driving under the influence. K.S.A. 1985 Supp. 8-1001(f) was enacted as part of a comprehensive revision of the statutes pertaining to driving under the influence of alcohol or drugs. The language of the statute is clearly manda-

tory. For additional discussion of the distinction between mandatory and directory, as applied to statutes, see *Wilcox v. Billings*, 200 Kan. 654, 657, 438 P.2d 108 (1968); 2A Sutherland Statutory Construction §§ 57.01-57.26 (Sands 4th ed. 1984); 73 Am. Jur. 2d, Statutes §§ 14-27. We conclude the notice provisions of K.S.A. 1985 Supp. 8-1001(f) are mandatory and not merely directory. The holding in *Doeden* to the contrary is overruled. The holding of the Court of Appeals in this case that the statute is directory and not mandatory is erroneous.

However, the foregoing does not necessarily dispose of the case before us. As with any notice required by statute, the provisions of K.S.A. 1985 Supp. 8-1001(f) need not be given in the exact words of the statute. While using the statutory language would have negated the issue now before us, it is generally recognized that substantial compliance with statutory notice provisions will usually be sufficient. To substantially comply with the requirements of the statute, a notice must be sufficient to advise the party to whom it is directed of the essentials of the statute.

Here, it is undisputed that the notice provisions of subsections (A) through (D) in the Department's form notices, although not identical with the statute, contained language sufficient to comply with the statute. As to subsection (E), the notice advised appellant of his right to consult with an attorney after taking the test and that he had the right to have additional testing done "as soon as possible and as available." Appellant contends the failure to advise that the testing "*should* be done as soon as possible" and where the testing is customarily available precludes suspension of his license. While it would be advisable for the Department to include the statutory language in its form notices, we are of the opinion that the notice as given conveyed the essentials of the statute and did not mislead the appellant. He was fully advised of his right to additional testing. Appellant did not refuse to take the BAT because of any deficiency in the notice but because he felt he was under stress and thought his constitutional rights were being violated. Appellant made no inquiry of the officer about additional testing, its availability, or when it should be done. We conclude that under the facts of this case, there was substantial compliance with the mandatory no-

tice requirements of K.S.A. 1985 Supp. 8-1001(f)(1)(E). Absent any showing of prejudice by appellant, the point lacks merit. Cf. *Howard v. Cofer*, 150 Ga. App. 579, 258 S.E.2d 195 (1979); *Wimmer v. MVD*, 75 Or. App. 287, 706 P.2d 182 (1985).

Next, the appellant contends that the statutory procedure utilized to suspend his driving privilege constituted a denial of his right to due process of law. At the time of his arrest, appellant's plastic driver's license was taken by the officer and he was given a combination paper license and notice of suspension which provided, *inter alia*, "This Notice is valid as a temporary license for fifteen (15) days from the date shown above [January 24, 1986]. Carry this Notice with you as a driver's license." The paper license also stated there were no restrictions on appellant's driving privilege and advised him of his rights to an administrative hearing before any actual suspension. On January 31, 1986, appellant mailed his request for an administrative hearing. K.S.A. 1985 Supp. 8-1002. On February 10, 1986, the Department mailed to appellant a notice that his requested hearing was set for February 27, 1986. The notice also provided that appellant's driving privilege was extended for an additional 45 days beyond February 10, 1986. Although appellant did not have written proof of his right to drive from February 8 to February 11, his privilege to drive was not suspended at any time prior to the administrative hearing.

Appellant asserts numerous arguments to support his claim that the statutes and the procedure utilized in his particular case violated his due process rights. The Court of Appeals addressed all his arguments at length, stating:

"Barnhart contends that the procedure set out in K.S.A. 8-1001 *et seq.* violates due process because it allows the plasticized driver's license to be taken by an arresting officer without a prior hearing.

"When legislation is challenged as violative of due process, the challenger must demonstrate that the legislation bears no reasonable relation to a permissible legislative objective. *Brown v. Wichita State University*, 219 Kan. 2, 21, 547 P.2d 1015 (1976).

"In *Mathews v. Eldridge*, 424 U. S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), the United States Supreme Court set forth the factors which must be considered:

'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'

"In applying the *Eldridge* factors, the U. S. Supreme Court, in *Dixon v. Love*, 431 U. S. 105, 113, 52 L. Ed. 2d 172, 97 S. Ct. 1723 (1977), stated:

'The private interest affected by the decision here is the granted license to operate a motor vehicle. Unlike the social security recipients in *Eldridge*, who at least could obtain retroactive payments if their claims were subsequently sustained, a licensee is not made entirely whole if his suspension or revocation is later vacated. On the other hand, a driver's license may not be so vital and essential as are social insurance payments on which the recipient may depend for his very subsistence. [Citation omitted.]'

"It is important to note that the United States Supreme Court cases regarding driver's licenses involved the question of due process where post-suspension hearings were provided. In the instant case, although Barnhart's driver's license was kept by the arresting officer, he was given a temporary license and had the opportunity to request a presuspension hearing. Because the U.S. Supreme Court has held that an evidentiary hearing is not required prior to driver's license revocation (see *Dixon* 431 U.S. 105, and *Mackey v. Montrym*, 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612 [1979]), the procedure utilized by the Kansas statute does not require a hearing prior to deprivation of the plasticized driver's license.

"The second factor to consider is the risk of an erroneous deprivation. In *Mackey v. Montrym*, 443 U.S. at 13, the U. S. Supreme Court held that:

'[W]hen prompt postdeprivation review is available for correction of administrative error, we have generally required no more than that the predeprivation procedures used be designed to provide a reasonably     reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be. [Citations omitted.]'

"The Kansas statute, which allows for a full evidentiary hearing before driving privileges are suspended, does not violate due process merely because the plastic driver's license is taken and a paper license substituted in its place.

"The third factor in the *Eldridge* test is the identification of the governmental function involved. In addressing this factor in *Mackey*, the United States Supreme Court, in upholding the summary procedure for suspension of driving privileges for those who refuse the breathalyzer test, stated:

'The Commonwealth's interest in public safety is substantially served in several ways by the summary suspension of those who refuse to take a breath-analysis test upon arrest. First, the very existence of the summary sanction of the statute serves as a deterrent to drunken driving. Second, it provides strong inducement to take the breath-analysis test and thus effectuates the Commonwealth's interest in obtaining reliable and relevant evidence for use in subsequent criminal proceedings. Third, in promptly removing such drivers from the road, the summary sanction of the statute contributes to the safety of public highways.' 443 U.S. at 18.

"Barnhart argues that (1) the plastic driver's license itself was taken without

any prior administrative review; (2) his driving privileges were interfered with, altered, and reduced, and an inferior right substituted therefor; (3) the statute places the burden on the driver to obtain administrative review; and (4) the officer's certification of form is not sworn under penalties of perjury.

"With regard to the first and second arguments, his driving privileges were not suspended until after the hearing held February 27, 1986. Through the temporary driver's license issued on January 24, 1986, and the 45-day continuation of his driving privileges following his request for an administrative hearing, Barnhart's driving privileges were protected prior to administrative review.

"Barnhart argues that an inferior right was substituted, following the taking of his class A-D driver's license. His argument seems to be based on the fact that the temporary driver's license does not indicate the class of license he held. K.S.A. 1986 Supp. 8-1002(b) provides, in relevant part, that: 'A temporary license issued pursuant to this subsection shall bear the same restrictions and limitations as the license for which it was exchanged.' Thus, a driver holding a class A-D license would be allowed to operate, pursuant to the temporary license, the same class of vehicles his plastic Kansas driver's license indicates he is permitted to operate. It would be better practice for the Department of Revenue to indicate the class of license on the temporary license, but the failure to do so is not a denial of due process.

"With regard to Barnhart's argument that due process is violated because the burden is placed on the driver whose license is suspended to seek administrative review, the same was apparently true in the cases of *Mackey, Dixon,* and *Illinois v. Batchelder,* 463 U.S. 1112, 77 L. Ed. 2d 1267, 103 S. Ct. 3513 (1983). The driver had the right to ask for a hearing, and no due process violation was found on that basis. It also appears that requiring the driver to request the hearing could reduce the administrative and fiscal burden on the state. See *Mackey,* 443 U.S. at 18, and *Dixon,* 431 U.S. at 114. All drivers may not elect to fight the suspension, and to mandate some sort of automatic presuspension hearing would have a detrimental effect on administrative efficiency.

"Finally, Barnhart contends that, because the officer only certifies his report and does not swear to it under penalty of perjury, due process is violated. As pointed out in *Mackey,* 'the risk of erroneous observation or deliberate misrepresentation of the facts by the reporting officer in the ordinary case seems insubstantial.' 443 U.S. at 14.

"In *Wilcox v. Billings,* 200 Kan. 654, 438 P.2d 108 (1968), a case decided when K.S.A. 8-1001 provided that the refusal to take the test must be indicated in a sworn report of refusal, the court held that the provision calling for a sworn report was mandatory. The court stated: 'We doubt if the legislature ever intended such drastic action should be taken on an unsworn averment alone.' 200 Kan. at 659. Since that time, K.S.A. 8-1001 *et seq.* has been amended to provide, specifically, that an officer's certification is sufficient and that 'certification shall be complete upon signing, and no additional acts of oath, affirmation, acknowledgment or proof of execution shall be required.' K.S.A. 1986 Supp. 8-1002(c)(2). It appears to us that the risk of an erroneous deprivation is not substantial here because the

information in the officer's certification can be verified by testing under oath in the presuspension hearing provided in the statute.

"In *Illinois v. Batchelder,* an Illinois implied consent statute provided for suspension following the refusal to submit to a breathalyzer test, unless a hearing was requested within 28 days of the mailing of the suspension notice. The United States Supreme Court held:

'The driver's right to a hearing *before* he may be deprived of his license for failing to submit to a breath-analysis test accords him all of, and probably more than, the process that the Federal Constitution assures.' 463 U.S. at 1119.

"Barnhart also argues that he was deprived of a driver's license for three days because the stated expiration period on the temporary driver's license was three days prior to his receipt of an extension of his driving privileges.

"Barnhart stipulated that no actual suspension of his driving privileges occurred during the three-day period. He was aware that if he requested an administrative hearing within ten days, that his driving privileges would be extended to the date of the administrative hearing.

"Thus, the issue is whether Barnhart's due process was violated where he did not, for three days, have a temporary license indicating on its face that he had current driving privileges.

"K.S.A. 1986 Supp. 8-1002(d) provides that the 45-day extension runs from the date of the written request, not the date the extension is granted. It states, in pertinent part:

'If, within 10 days after notice was served, the person mails a written request for a hearing, the division shall stay action on the suspension, [and] extend the temporary license for 45 days beyond the date of the written request.'

"Once Barnhart requested a hearing, the timeliness of which is not disputed, the 45-day extension began on the date of the written request. He was not deprived of his driving privileges for the period from February 8 to February 10."

The Court of Appeals concluded that none of appellant's due process arguments had merit. We concur in the Court of Appeals' decision on this issue. Neither the statutes nor the procedure in this case constitute a denial of appellant's right to due process of law.

The judgment of the district court is affirmed. The judgment of the Court of Appeals is affirmed. The holding in *State v. Doeden,* 12 Kan. App. 2d 245, 738 P.2d 876, *rev denied* 242 Kan. 904 (1987), that the notice requirements of K.S.A. 1985 Supp. 8-1001(f)(1) are directory rather than mandatory is overruled.