The Honorable Michael R. O'Neal State Representative, 104th District Box 2977 Hutchinson, Kansas 67504
Dear Representative O'Neal:
You request an opinion concerning section 12 of chapter 292 of the session laws of 1993 (the omnibus appropriation act). That section allocates $375,000 for fiscal year 1994 to the judicial branch for the payment of the costs and expenses associated with post-conviction non-prison sanctions for felony offenders pursuant to section 300 of chapter 239 of the laws of 1992 (the sentencing guidelines act) which states that "all costs and expenses associated with post-conviction prison and non-prison sanctions imposed for felony convictions and time spent in a county jail pursuant to a non-prison sanction imposed for felony convictions shall be the responsibility of and paid by the state of Kansas." Section 12 of chapter 292 provides, as follows:
 "Post-conviction non-prison sanctions for felony offenders:
 "Provided, that expenditures may be made from this account for only those post-conviction non-prison sanction costs certified by the secretary of the department of corrections to be paid from this account:
 "Provided further, that the rate of reimbursement for the expenses of such sanctions shall be determined and fixed by the rules enacted by the Supreme Court of the state of Kansas." (Emphasis added).
You inquire whether the last proviso violates the separation of powers doctrine by delegating to the judiciary rate making authority which is usually associated with the executive or legislative branches of government. You also request an opinion whether the counties — who will be the entities requesting reimbursement of the expenses associated with non-prison sanctions — have any recourse if the $375,000 appropriation is insufficient to cover the expenses. Finally, you inquire what happens to the appropriation in the event that the last proviso of section 12 is unconstitutional.
Before addressing your inquiry, it is necessary to review briefly the legislative history of the sentencing guidelines act and the costs of implementing it. One of the goals of the act is to ensure that those persons convicted of serious offenses against individuals are incarcerated and that the less serious offenders with minimal criminal histories are placed in community based situations involving probation, community corrections programs, conservation camps, and house arrest. With prison populations growing and the concomitant expense to the state, it was believed that the diversion of less serious offenders to non-prison situations would be more cost effective for the state. However, with this diversion comes anticipated increased costs and expenses for counties which are generally responsible for all expenses incurred for the operation of the district courts. K.S.A. 20-348. In order to obtain support from the counties for the sentencing guidelines act, a conference committee added language that the state would pay for the costs of non-prison felony sanctions. Senate Journal, May 1, 1992, pg. 2085.
Pursuant to the act, whenever a person is found guilty of a less serious crime and has little or no criminal history, the court has several alternatives involving non-prison sanctions. These options include the release of the defendant on probation supervised by a court services officer, assignment to a community corrections service program, assignment to a conservation camp, or assignment to a house arrest program. In addition, the court can require the defendant to complete an alcohol or drug education program by a certified community based program. L. 1992, Ch. 239, sec. 238.
It is difficult to determine what the costs associated with non-prison felony sanctions will be. For example, while the salaries of court services officers are paid by the state, it is the counties that must provide the office space, pay the travel expenses as well as any other expenses incident to the position. (Attorney General Opinion No. 90-88). Whether the county seeks reimbursement for these incidental expenses remains to be seen. The community corrections act operates by way of grants from the state (through the secretary of corrections) to participating counties for the development, implementation and improvement of community based corrections programs and facilities for the detention of adults convicted of crimes. K.S.A. 75-5291. However, if there are expenses which the grants don't cover, a county might seek reimbursement. In addition, there may be costs associated with the house arrest program which operates with an electronic monitoring system. These sanctions are administered by the courts and the secretary of corrections. K.S.A. 21-4603b. Finally, there are costs associated with the alcohol and drug program if the defendant is unable to pay the fee. K.S.A. 1992 Supp. 21-4502(4).
Section 12 of the omnibus appropriation act puts the onus on the Supreme Court to establish a "rate of reimbursement." You indicate that originally the department of corrections requested $750,000 for the payment of felony non-prison sanctions but when the amount was cut in half, the department no longer wanted to be involved. Why the judiciary was chosen to establish the rates of reimbursement is unknown.
With this background in mind, we will address the separation of powers query.
Neither the United States constitution nor the Kansas constitution expressly provides for separation of powers. State ex rel. Stephan v.Kansas House of Representatives, 236 Kan. 45, 59 (1984). The governments, both state and federal, are divided into three departments, each of which is given the powers and functions appropriate to it. Because of the establishment of the three branches of government, the courts assumed the applicability of the doctrine of separation of powers among the three branches of government — legislative, executive and judicial. Leek v. Theis, 217 Kan. 784, 804 1975. The very structure of the three branch system of government gives rise to the doctrine. Stateex rel., Stephan, 236 Kan. at 59. The separation of powers doctrine is designed to avoid a dangerous concentration of power and to allow respective powers to be assigned to the department best fitted to exercise them. Leek, 217 Kan. at 805. However, an absolute separation of powers is impossible and a flexible, pragmatic and practical approach to the doctrine is the modern trend in this state. State v. Reed,248 Kan. 792 (1991). When a statute is challenged under the constitutional doctrine of separation of powers, the court must search for usurpation by one department of the powers of another department based upon the specific facts and circumstances presented. Reed. A usurpation of power exists when there is a significant interference by one department with the operations of another department. Reed. In determining whether or not a usurpation of power exists, a court will consider the essential nature of the power being exercised, the degree of control by one department over another, the objective sought to be attained by the legislature and the practical result of the blending of powers as shown by actual experience over a period of time. State exrel. v. Bennett, 219 Kan. 285, 290 (1976).
In applying this test, we are cognizant that the judiciary exercises both legislative and executive type powers because the Kansas constitution gives the Supreme Court general administrative authority over all state courts. Kan. Const., Art. 3, sec. 1. In exercising that power, the court acts in an administrative and legislative capacity by enacting rules regulating the district courts and the practice of law.State ex rel. Stephan v. Smith, 242 Kan. 336, 371 (1987). However, this rule-making is only incidental and done for the purpose of preserving the judiciary's independence. Nash v. Glen Elder, 81 Kan. 446, 449 (1916). The court's fundamental and essential power is to interpret the law and determine controversies between rival litigants. State ex rel. v.Mohler, 98 Kan. 465, 471 (1960).
As far as the first factor is concerned in the Bennett test — the "essential nature of the power being exercised" — rate making in general is essentially a legislative or executive function. State v.Johnson, 61 Kan. 803 (1900). In the Johnson case, the court concluded that a statute creating a "court of visitation" which authorized the court to establish freight rates violated the separation of powers doctrine because the state conferred upon the court powers "essentially legislative and executive."
 "The rate-making power, being essentially legislative in its nature, whether exercised directly by the legislature or delegated by it to a competent board or commission, can no more be imposed on or exercised by the judicial department than can the pardoning power of the governor or any other distinctively executive function. It is a cardinal principle of representative government that the making of laws and rules regulating the future conduct and fixing the rights of parties belongs to the legislative department — a power which can never be reposed in or exercised by the judiciary. Some of the legislative powers, as before stated, may be delegated to municipal boards and local commissions, but what is called the power to enact laws cannot be delegated; but whether these functions are such as may be delegated or not, they are wholly incompatible with judicial powers, and can never be conferred on or exercised by the judicial department. While the line of division between the three powers is not marked distinctly, and it is not always easy to lay down an abstract rule defining each of the separate powers of sovereignty, all courts and all authorities unite in holding that the rate-making power is intrinsically legislative. In exercising such power, whether by the legislature or by a commission, general rules prescribing the duties, fixing the rights and regulating the conduct of persons and corporations in the future are made, and the combining of such a power with those essentially judicial, or vesting it in a court, is a palpable and flagrant violation of the constitutional principle and limitation regulating the separation of the sovereign powers." (Johnson at pp. 820-821)
The second factor involving the degree of control by the judiciary over the executive branch is obvious because this essentially executive task of establishing rates is completely removed from the executive branch. The third factor involving the objective of the legislature in delegating this task to the judiciary is difficult to address because there is nothing in the legislature history which illuminates the reasoning behind it. However, what is of most concern to us is the last factor which deals with the practical result of this "blending of powers." If there is litigation involving section 300's requirement that all costs and expenses be paid by the state and exactly what those costs are, the Supreme Court may be placed in the position of having to judge its own actions in establishing the rates of reimbursement. Whether this scenario ever occurs is not material — what is material is that the possibility exists and this "blending" of the executive power of rate making and the judicial power is potentially dangerous. Applying theBennett test it is our opinion that the delegation of rate making authority to the judiciary is unconstitutional under the separation of powers doctrine because it improperly delegates an inherently executive power to the judiciary. Consequently, the appropriation amount of $375,000 to the judiciary is invalid and will remain in the general fund until the legislature can convene and pass a new appropriations statute. Kan. Const., Art. 2, sec. 24.
The answer to your second question concerning what remedies counties may have if $375,000 is insufficient to cover the expenses involves the interpretation of section 300 of chapter 239 of the laws of 1992 and section 12 of chapter 292 of the laws of 1993. Section 300 states, in relevant part, as follows:
 "All costs and expenses associated with post conviction prison and non-prison sanctions imposed for felony convictions and time spent in a county jail pursuant to a non-prison sanction imposed for felony convictions shall be the responsibility of and paid by the state of Kansas."
"Shall" is sometimes held to be directory and not mandatory. State v.Doeden, 12 Kan. App. 2d 245, 248 (1987). "Shall" is frequently read to mean "may" where the context requires. Paul v. City of Manhattan,212 Kan. 381, 385 (1973). A statutory provision using the word "shall" may be held directory rather than mandatory where: (1) not accompanied by negative words indicating that specific acts can be done in no other manner; or (2) there are no consequences of noncompliance. State v.Doeden.
It is our opinion that the word "shall" in section 300 is not mandatory. This position is supported by the appropriation amount stated in section 12 of chapter 292 which we interpret to mean that the state is only obligated to pay an amount not exceeding $375,000 for the costs associated with non-prison felony sanctions for fiscal year 1994.
Relying on the rules of statutory construction in order to harmonize these two sections, it is our opinion that section 12 is a special statute pertaining to the subject of post-conviction non-prison sanction costs as opposed to section 300 which is a general statute on the same subject and that while a general and special statute should be read together and harmonized as much as possible, if conflict exists — as appears in this case — the special statute will prevail unless it appears that the legislature intended to make the general statute control. Chamberlin v. Behrman, 250 Kan. 277 (1992). Also, where legislative acts are in conflict, the earlier act will yield to a latter one. American Fidelity Insurance v. Employers Mutual Casualty Company,3 Kan. App. 2d 245 (1979). Consequently, section 12 of chapter 292 (Laws of 1993) prevails over section 300 of chapter 239 (Laws of 1992) and the appropriation amount for fiscal year 1994 serves as a cap for payment of expenses associated with non-prison felony sanctions.
Summarizing our opinion, the second proviso of section 12 of chapter 292 of the laws of 1993 is an unconstitutional delegation of authority to the judiciary and, consequently, the appropriation amount remains in the general fund until the legislature convenes and a new appropriation statute is enacted. Furthermore, the state is only responsible for paying those costs and expenses which do not exceed the appropriation amount for fiscal year 1994.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Mary Droll Feighny Assistant Attorney General
RTS:JLM:MDF:bas