NOT DESIGNATED FOR PUBLICATION

No. 123,534

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

AMANDA MITCHELL,
*Appellee,*

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant.*


MEMORANDUM OPINION

Appeal from Shawnee District Court; MARY E. CHRISTOPHER, judge. Opinion filed February 18, 2022. Reversed and remanded with directions.

*Ted E. Smith*, of Legal Services Bureau, Kansas Department of Revenue, for appellant.

*Jay Norton*, of Norton Hare, LLC, of Overland Park, for appellee.


Before SCHROEDER, P.J., WARNER and ISHERWOOD, JJ.


PER CURIAM: The Kansas Department of Revenue (KDR) appeals the district court's decision to vacate its administrative suspension and reinstate Amanda Mitchell's driving privileges. KDR argues the district court misapplied K.S.A. 8-1001 et seq., which requires officers to give drivers complete notice of their statutory rights before the officer may administer an evidentiary breath test. Based on a comprehensive review of the issues presented, we conclude reversal of the district court's decision and a remand with instructions to reinstitute Mitchell's suspension is warranted.

FACTUAL AND PROCEDURAL BACKGROUND

On June 7, 2019, Kansas Highway Patrol Trooper Sean Swords clocked a vehicle traveling at 113 miles per hour in a 75 mile-per-hour zone in Shawnee County. Trooper Swords executed a traffic stop and contacted the driver, Amanda Mitchell. In speaking with Mitchell, Swords detected signs of impairment, so he asked Mitchell to perform a breathalyzer test.

Before Trooper Swords administered the test, he read Mitchell the notices from the 2018 DC-70 form. One paragraph of that form mirrored K.S.A. 2018 Supp. 8-1001(c)(2), which requires officers to provide drunk driving suspects with notice that "if the person refuses to submit to and complete the test or tests, or if the person fails a test, the person's driving privileges will be suspended *for a period of at least 30 days and up to one year*." (Emphasis added). The language is intendedn to act as a summary of the KDR's powers to penalize drunk drivers under K.S.A. 2018 Supp. 8-1014. But that statute, unlike K.S.A. 2018 Supp. 8-1001(c)(2), decouples the penalties for failure and refusal. For example, K.S.A. 2018 Supp. 8-1014(a) provides escalating penalties for *refusing* a test depending on whether the driver has previously refused a test—for the first occurrence a driver is subject to a one-year suspension followed by an ignition interlock restriction for two years and a second occurrence subjects the driver to a one-year suspension followed by a three-year restriction. K.S.A. 2018 Supp. 8-1014(b) provides different escalating penalties for test *failure*. The first occurrence leads to a 30-day suspension, while a second transgression carries a one-year suspension. By contrast, K.S.A. 2018 Supp. 8-1001(c)(2) merges the varied possible penalties into one provision.

Following receipt of the notice, Mitchell refused to submit to the breath test. That refusal triggered a one-year suspension under K.S.A. 2018 Supp. 8-1014(a). Mitchell also received notice that her driver's license would be suspended for one year.

Mitchell requested an administrative hearing with the KDR which affirmed her suspension. She timely petitioned the Shawnee County District Court for judicial review and argued the DC-70 form "was misleading and failed to comply with Kansas law." After hearing arguments from both parties, the district court found that the DC-70 did not substantially comply with the statute and vacated the KDR's suspension.

KDR timely appealed the district court's ruling to this court.

ANALYSIS

DID THE NOTICE PROVIDED BY K.S.A. 2018 SUPP. 8-1001(c)(2) SUBSTANTIALLY CONFORM TO KDR'S SUSPENSION POWERS UNDER K.S.A. 2018 SUPP. 8-1014?

Whether the implied consent notice complies with statutory requirements and provides sufficient notice to drivers requires an analysis of the relevant statutory provisions. Interpretation of a statute presents a question of law over which we exercise unlimited review. *Shrader v. Kansas Dept. of Revenue*, 296 Kan. 3, 6, 290 P.3d 549 (2012).

*The recent history of K.S.A. 2018 Supp. 8-1001 and K.S.A. 2018 Supp. 8-1014*

The district court's analysis of this issue rested on its interpretation of K.S.A. 8-1001(c)(2) and (c)(3), which respectively read: "[I]f the person refuses to submit to and complete the test or tests, the person's driving privileges will be suspended *for a period of one year*. [I]f the person fails a test, the person's driving privileges will be suspended *for a period of either 30 days or one year*." (Emphasis added.) The court compared this to the DC-70, which warned: "If you refuse to submit to and complete the test or tests, or if you fail a test, your driving privileges will be suspended *for a period of at least 30 days and up to one year*." (Emphasis added.) The court held that the DC-70 form did not

3

accurately advise Mitchell of the legal risks of submitting to a breath test and therefore did not substantially comply with the law.

The district court erroneously referred to the 2019 version of K.S.A. 8-1001 in its analysis. But the statute was amended on April 5, 2019, when H.B. 2104 was signed into law with an effective date of July 1, 2019. See L. 2019, ch. 13, § 1. The bill amended K.S.A. 2018 Supp. 8-1001(c)(2), which read: "[I]f the person refuses to submit to and complete the test or tests, or if the person fails a test, the person's driving privileges will be suspended *for a period of at least 30 days and up to one year.*" (Emphasis added.) In other words, the 2018 DC-70 Trooper Swords read from mirrored the language of its corresponding statute. Mitchell refused the test on June 7, 2019, about three weeks before the current version of K.S.A. 8-1001(c)(2) took effect. This means the 2018 version of the statute, rather than the 2019 modification used by the district court, applies to Mitchell's case.

*Relevant caselaw*

Nearly four decades ago, the Kansas Supreme Court held that officers must notify suspects of their statutory rights before the suspect can knowingly consent to an evidentiary blood, breath, or urine test. *Standish v. Department of Revenue*, 235 Kan. 900, 904-05, 683 P.2d 1276 (1984). Since *Standish*, Kansas courts have grappled with the question of what constitutes proper notice.

This body of law started to take shape with *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 (1988), where the Kansas Supreme Court held that a form which substantially complies with the corresponding statute is enough to provide suspects with the requisite notice. To achieve substantial compliance, notices must advise a suspect of the "essentials of the statute." 243 Kan. at 213. Thus, two categories of notice

arose: those which substantially conformed to their corresponding statutory right and those that misinformed suspects of the law.

KDR argues this case resembles *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 473, 447 P.3d 959 (2019), which fell squarely within the substantial compliance camp. The issue in *Creecy* involved the 2014 version of the DC-70 form, which warned suspects of increased penalties if they had "'a prior refusal for an evidentiary test for alcohol or drugs.'" 310 Kan. at 471. The corresponding statute defined "test refusal" as "a person's failure to submit to or complete any test of the person's blood, breath, urine or other bodily substances, other than a preliminary screening test." K.S.A. 2014 Supp. 8-1013(i). Creecy argued that the notice failed to adequately define "test refusal" to exclude preliminary tests, which led him to mistakenly believe that a prior preliminary test refusal might subject him to increased penalties. The Supreme Court held that although the DC-70's language was "'obscure,'" it still substantially complied with the law. The term "'evidentiary test'" sufficiently distinguished that test from a preliminary breath test, to render the notice appropriate. 310 Kan. at 473.

Mitchell contends her case is more like *Meigs v. Kansas Dept. of Revenue*, 251 Kan. 677, 840 P.2d 448 (1992). In *Meigs*, the DC-70 at issue warned suspects that a refusal to submit to the test would cause a suspension of driving privileges for "'at least 180 days,'" but under the statute, a refusal actually triggered a suspension for a term of "'at least one year.'" 251 Kan. at 681; see K.S.A. 1989 Supp. 8-1001(f)(1). The *Meigs* court held that based on this discrepancy it could not find the form substantially complied with the statute because the erroneous language might affect a suspect's calculus when deciding whether to submit to the test. 251 Kan. at 681 ("'An individual might find a suspension of 180 days acceptable but reject the risk of a suspension for one year.'"). Thus, the notice did not "'convey an accurate impression of the actual risk'" to the suspect, as required under the statute. 251 Kan. at 681. Mitchell claims that the combined

notices for refusal and failure in K.S.A. 2018 Supp. 1001(c)(2) similarly convey an inaccurate impression of the risk of refusal.

Interestingly, neither party cites a recent case from our court that is precisely on-point here. In *Anderson v. Kansas Dept. of Revenue*, No. 122,564, 2021 WL 300080 (Kan. App. 2021) (unpublished opinion), Anderson also argued the suspension section of K.S.A. 2018 Supp. 8-1001(c)(2) created confusion and misstated the law. But the panel rejected that argument and held that the notices complied with K.S.A. 2018 Supp. 8-1014 because they "provided a range of possible consequences that covered test failures and test refusals." 2021 WL 300080, at *4. Anderson also argued that the 2019 amendment to K.S.A. 8-1001, again which decoupled the notices for test refusals and failures to match K.S.A. 2019 Supp. 8-1014, demonstrated that the Legislature recognized the confusion and undertook specific measures to correct it. The *Anderson* court determined that while the change "provided a more explicit statement of the consequences of a test refusal versus a test failure," K.S.A. 2018 Supp. 8-1001(c)(2) remained an accurate statement of the law and did not insulate Anderson from the consequences attendant to his refusal of the breath test. 2021 WL 300080, at *5.

Mitchell does not advance an argument that compels us to revisit the identical issue decided by *Anderson* with an eye toward arriving at a different outcome. The notice provided to Mitchell by Trooper Swords substantially complied with the necessary statutory provisions.

DID KDR VIOLATE MITCHELL'S DUE PROCESS RIGHTS?

Finally, Mitchell argues that K.S.A. 2018 Supp. 8-1001(c)(2) violates her substantive and procedural due process rights. KDR responds that Mitchell's due process arguments are misplaced because the issue is a statutory one. The district court resolved the claim on statutory grounds and therefore did not reach Mitchell's due process

arguments. Matters of statutory and constitutional interpretation raise pure questions of law subject to unlimited appellate review. *Johnson v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 431, 442, 472 P.3d 92 (2020).

*Substantive due process*

Mitchell first contends that her substantive due process rights were violated because K.S.A. 2018 Supp. 8-1001(c)(2) did not provide the information required to knowingly consent to a breath test. She invokes *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016), to argue that KDR infringed on an important constitutional interest.

This argument does not afford Mitchell the relief she seeks. An issue of this nature was also advanced in *Johnson.* Much like Mitchell, Johnson likewise claimed KDR violated his substantive due process rights when it suspended his license after he failed a breath test. And like Mitchell, Johnson directed the court to *Ryce* in support of his claim. The *Johnson* court found that because KDR's license suspension hearings do not constitute criminal proceedings, the same substantive due process protections do not apply. 58 Kan. App. 2d at 449. Further, since Johnson did not assert that the statutory scheme failed to protect a legitimate state interest or was otherwise arbitrary in its application, his substantive due process rights were not violated.

Mitchell acknowledges the state interest is legitimate and she does not argue that it was applied arbitrarily. As a result, her substantive due process claim is similarly unfounded.

*Procedural due process*

Mitchell also asserts a violation of her procedural due process rights occurred when KDR allegedly suspended her license without providing adequate notice of the

statute. Procedural due process requires notice and a meaningful hearing before formal action is taken to deprive a person of his or her license. *Kempke v. Kansas Dept. of Revenue*, 281 Kan. 770, 776, 133 P.3d 104 (2006).

We have already resolved the notice component. This issue was also before the *Johnson* court, but it declined to address the matter because Johnson did not allege that KDR deprived him of the right to an administrative review or trial on his claims. 58 Kan. App. 2d at 446. Mitchell also neglects to make such a claim. Notably, the record before us reflects that Mitchell requested an administrative review hearing and KDR honored that request in September 2019. When that proceeding failed to yield the result Mitchell had hoped for, she pursued and received judicial review of her case by the district court. Given there is no indication Mitchell suffered a deprivation of her rights, her procedural due process argument also fails.

Reversed and remanded with directions to reinstitute the suspension of Mitchell's license.