No. 57,800

STATE OF KANSAS, *Appellee,* v. BRIAN FOWLER, *Appellant.*

(708 P.2d 539)

Opinion filed October 25, 1985.

*Craig Shultz,* of Shultz & Webb, Chartered, of Wichita, argued the cause and was on the brief for the appellant.

*Kimberly Gee Vines,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were with her on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action in which Brian Fowler (defendant-appellant) pled guilty to two counts of aggravated robbery (K.S.A. 21-3427) and was sentenced to the mandatory minimum sentence (five to twenty years for each count) and denied probation pursuant to K.S.A. 21-4618. The defendant contends the trial court erred in imposing sentence under K.S.A. 21-4618 because the pellet gun he used in the commission of the robbery was not a "firearm" for purposes of the statute.

There is no dispute that the weapon used by the defendant was a Crosman .177 caliber pellet gun. At a hearing held by the sentencing court to determine whether this weapon was a "firearm" as that term is used in K.S.A. 21-4618, a firearms expert testified regarding the operation of the weapon. Inside the handle of the gun is a carbon dioxide ($CO_2$) cartridge which contains compressed gas. When the trigger is squeezed, the gas is discharged, forcing a pellet through the barrel. The expert noted

that the sudden release of the compressed gas is a type of explosion. He further testified that the gun operated essentially the same as a pump air rifle.

The sentencing court ruled that the pellet gun was a "firearm" as that term is defined in *State v. Davis*, 227 Kan. 174, 177, 605 P.2d 572 (1980). Therefore, the court imposed a mandatory minimum sentence under K.S.A. 21-4618, and, by virtue of the same statute, denied the defendant's request for probation or suspension of sentence.

The sole issue on appeal is whether the pellet gun is a "firearm" within the provisions of K.S.A. 21-4618, which states in pertinent part:

"Probation or suspension· of sentence shall not be granted to any defendant who is convicted of the commission of the crime of rape, the crime of aggravated sodomy or any crime set out in article 34 of chapter 21 of the Kansas Statutes Annotated in which the defendant used any *firearm* in the commission thereof and such defendant shall be sentenced to not less than the minimum sentence of imprisonment authorized by law for that crime." (Emphasis added.)

"Firearm" is not defined by statute. This court supplied a definition in *State v. Davis*, 227 Kan. 174, Syl. ¶ 2:

"For purposes of sentencing under K.S.A. 1978 Supp. 21-4618, a 'firearm' is defined as an object having the design or capacity to propel a projectile by force of an explosion, gas, or other combustion."

This definition was reaffirmed in *State v. Pelzer*, 230 Kan. 780, 782, 640 P.2d 1261 (1982).

In *Davis*, we held a starter pistol is not a firearm within the definition. The starter pistol had a permanent plug in the barrel which prevented the firing of a projectile. We first held it was a dangerous weapon for purposes of raising the offense from robbery to aggravated robbery. (A subjective test was employed—did the victim believe that the weapon was dangerous?) However, since the gun was neither designed for nor capable of propelling a projectile it could not be considered a "firearm" within the meaning of K.S.A. 21-4618.

In *Pelzer*, this court applied the definition given in *Davis* in order to determine whether an inoperable (mechanically defective) handgun is a firearm. This court determined that since a "firearm" is to be determined by its design *or* capacity to propel a projectile, and since the gun had been *designed* to propel a projectile, the gun was a firearm. In reaching this decision, we noted:

"Any handgun which is designed to propel a projectile is a firearm. Any present disrepair which might render it inoperable does not make it any less a firearm. If the legislature intended to exclude from the term 'firearm,' as used in 21-4618, those firearms which are inoperable it could have so stated. This it failed to do." 230 Kan. at 782.

The defendant in this case relies upon *State v. Johnson*, 8 Kan. App. 2d 368, 657 P.2d 1139, *rev. denied* 233 Kan. 1093 (1983). In that case, the Court of Appeals held that a pneumatic (pump) air rifle designed for and capable of shooting BB's or .177 caliber pellets was not a firearm within the meaning of that term as stated in *Davis* and *Pelzer*. The court stated:

"The air rifle used in this case was not originally designed to propel a projectile by explosive force nor did it have the capacity to do so. The air rifle was not a firearm as defined in *Davis*." 8 Kan. App. 2d at 370.

The defendant argues that, in light of the similarity between the weapon used by the defendant in the instant case and the weapon discussed in *Johnson*, the trial court erred by failing to follow *Johnson*. The defendant also argues that the trial court erred because criminal statutes must be strictly construed against the State and in favor of the defendant.

The State, on the other hand, argues that the gun used by the defendant in this case fits within the *Davis* definition because it had the "capacity to propel a projectile by force of . . . gas . . . ." Further, expert testimony established that the sudden release of the $CO_2$ creates a type of explosion.

It is true that penal statutes are to be strictly construed in favor of the defendant. *State v. Rose*, 234 Kan. 1044, 677 P.2d 1011 (1984). A criminal statute should not be extended by courts to embrace conduct not clearly included within the prohibition of the statute. However, the rule of strict construction concerning penal statutes is subordinate to the rule that judicial interpretation must be reasonable and sensible to effectuate legislative design and the true intent of the legislature. See *State v. Millett*, 392 A.2d 521 (Me. 1978).

In *Davis*, this court defined a previously undefined statutory term with the nature and purpose of the statute foremost in mind. See *State v. Pelzer*, 230 Kan. at 782. See also Note, *Sentencing, Probation and Parole: Mandatory Minimum Terms for Certain Offenses Involving Firearms*, 26 Kan. L. Rev. 277, 281 (1978). We adhere to the definition in *Davis*.

The defendant argues that the definition "explosion, gas, or other *combustion*" implies some type of explosion or combustion within the firearm as opposed to the "mere" release of compressed gas. The defendant buttresses this argument by noting that Black's Law Dictionary 761 (4th ed. rev. 1968) was cited as authority for the definition given in *Davis*. Black's defines a firearm in terms of whether gunpowder is used to cause an explosion.

Although this court cited to Black's Law Dictionary, the definition we adopted was intentionally made broader. The court did not limit the definition of firearm to weapons which employ gunpowder. The definition specifically includes weapons designed to propel a projectile by force of an explosion, *gas*, or combustion. The court did not limit the definition to guns which use gunpowder or similar combustibles.

We have reviewed cases from other jurisdictions which have considered whether a $CO_2$-powered pellet gun is a firearm. However, the decisions in these cases are based on each state's statutory or judicial definition of a firearm. There is no uniformity among the states—some states have included the pellet gun as a firearm, others have not. See, *e.g.*, *People v. Gee*, 97 Mich. App. 422, 296 N.W.2d 52 (1980) (statutory definition includes pellet gun, but specifically excepts those designed to use pellets not to exceed .177 caliber); *State v. Beaudette*, 124 N.H. 579, 474 A.2d 1012 (1984) (follows Webster's definition that a firearm uses gunpowder and finds pellet gun is not a firearm); *State v. Mieles*, 199 N.J. Super. 29, 488 A.2d 235 (1985) (statutory definition includes pellet gun); *Rafferty v. State*, 29 Wis. 2d 470, 138 N.W.2d 741 (1966) (follows Black's definition and finds pellet gun is not a firearm).

We have found only one other jurisdiction which includes the word "gas" in its definition. In *Coleman v. State*, 506 P.2d 558, (Okla. Crim. 1972), the court noted that the statutory definition of "firearm" in Oklahoma is "an instrument capable of discharging a projectile composed of any material which may be reasonably expected to cause lethal injury and using either gunpowder, *gas* or any means of rocket propulsion . . . ." (Emphasis added.) This definition was applied for purposes of a concealed weapons charge in *Thompson v. State*, 488 P.2d 944 (Okla. Crim. 1971), in determining whether an air pistol is a "firearm." The court found

it was not a firearm because it could not be "reasonably expected to cause death" and because "an air compression gun does not operate by force of a chemical explosion, using gunpowder, gas or any means of rocket propulsion. Thus, an air compression gun does not imitate the explosive nature of a firearm."

To the contrary, in the instant case an expert testified that the sudden release of compressed air is an explosion, and although the release of compressed air is a different type of explosion than one created by gunpowder, the principle is the same. He also testified a pellet gun could cause injury to a human being.

It is clear that pellet guns are not toys. It is the opinion of this court that the legislature intended to deter criminals from using dangerous air pellet guns as well as guns powered by the explosion of gunpowder. The legislature sought to curb not only death caused by the use of firearms, but also injury to persons.

The validity of *State v. Johnson*, 8 Kan. App. 2d 368, concerning the BB gun there described is a question we leave open.

We find the pellet gun described in this case fits within our definition of a "firearm" because it is capable of and was designed to "propel a projectile by force of . . . gas . . . ." It follows the trial court did not err by imposing sentence under K.S.A. 21-4618.

The sentence imposed by the trial court is affirmed.