(825 P.2d 1175)

No. 66,476

ELIZABETH MEIGS, *Appellee*, v. KANSAS DEPARTMENT
OF REVENUE, *Appellant*

Opinion
filed February 14, 1992.

*Brian Cox*, of Kansas Department of Revenue, for the appellant.

*Steve A. Leben*, of Overland Park, and *Thomas F. McGraw III*, of Overland Park, for the appellee.

Before BRAZIL, P.J., LEWIS, J., and JOHN W. WHITE, District Judge, assigned.

LEWIS, J.: This appeal involves the suspension of a driver's license by the Kansas Department of Revenue. At the administrative hearing held in this matter, the appellee's driver's license was suspended for a period of one year for refusing to submit to testing. The appellee appealed that decision to the district court, which set aside the order of suspension and reinstated her driver's license. The Kansas Department of Revenue appeals from the decision of the district court.

The issue on appeal is whether the arresting officer complied with the notice requirements of K.S.A. 8-1001(f)(1). If he did not, we must decide what effect that failure had on the ability of the appellant to suspend the appellee's driver's license.

The appellee was involved in a hit-and-run accident involving property damage to another vehicle. In investigating this accident, the police officers discovered the appellee coming out of a woods near the scene. According to the officers, the appellee appeared intoxicated, smelled of alcohol, had bloodshot and glassy eyes, and was staggering. It was determined that the appellee had been driving the hit-and-run vehicle. She was given and failed field sobriety tests. The appellee allegedly admitted, " 'I'm drunk,' " to her parents, in the presence of the police officers.

The appellee was arrested and transported to a local hospital because she claimed to have ingested an excessive amount of Tylenol. After arriving at the hospital, the arresting officer gave her written and oral notices required by K.S.A. 1989 Supp. 8-1001(f)(1). The appellee was notified, among other things, that, if she refused to submit to testing, her driving privileges would be suspended for *at least 180 days*. After being given the notices referred to, the appellee refused to submit to a blood test, stating, " '[B]ecause if I do I'll be convicted.' "

K.S.A. 1990 Supp. 8-1001(f)(1), the version of the statute applicable at the time of the accident, provided, in pertinent part:

"Before a test or tests are administered under this section, the person shall be given oral and written notice that: (A) Kansas law requires the person to submit to and complete one or more tests of breath, blood or urine to determine if the person is under the influence of alcohol or drugs,

or both; (B) the opportunity to consent to or refuse a test is not a constitutional right; (C) there is no constitutional right to consult with an attorney regarding whether to submit to testing; (D) *if the person refuses to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, the person's driving privileges will be suspended for at least one year*; (E) if the person submits to and completes the test or tests and the test results show an alcohol concentration of .10 or greater, the person's driving privileges will be suspended for at least 30 days; (F) if the person refuses a test or the test results show an alcohol concentration of .10 or greater and if, within the past five years, the person has been convicted or granted diversion on a charge of driving under the influence of alcohol or drugs, or both, or a related offense or has refused or failed a test, the person's driving privileges will be suspended for at least one year; (G) refusal to submit to testing may be used against the person at any trial on a charge arising out of the operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both; (H) the results of the testing may be used against the person at any trial on a charge arising out of the operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both; and (I) after the completion of the testing, the person has the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities and physicians. After giving the foregoing information, a law enforcement officer shall request the person to submit to testing. The selection of the test or tests shall be made by the officer. If the person refuses to submit to and complete a test as requested pursuant to this section, additional testing shall not be given unless the certifying officer has probable cause to believe that the person, while under the influence of alcohol or drugs, or both, has operated a motor vehicle in such a manner as to have caused the death of or serious injury to another person."

When the statute is compared with the notices given to the appellee, it is apparent that the statute was not complied with. The appellee was advised that, if she refused testing, her driver's license would be suspended for "at least 180 days." The statute, as it read at the time of the incident, required that the appellee be advised that her driver's license would be suspended for "at least one year." The notice given to the appellee does not comply with the notice required by the emphasized portion of the law quoted above. The appellee was also given a written copy of the required notices, which repeated the language of "at least 180 days." The appellant concedes the notices given did not comply with the statute. The warning had been changed from "at least 180 days" to "at least one year" only 16 days prior to the incident

in question. The arresting officer had failed to make note of this change in the law, and the appellant had failed to change the written notification forms which it supplies to arresting officers for use in complying with the statute.

The question which this court must determine is whether the failure to give the required notices established by the statute affects the right of the State to suspend the appellee's driver's license based on her refusal to submit to testing.

We begin with the proposition that 8-1001 has been construed to be a penal statute and the rule of strict construction applies:

"Judicial interpretation of statutes must be reasonable and sensible to effectuate legislative design and the true intent of the legislature. *State v. Fowler*, 238 Kan. 213, 215, 708 P.2d 539 (1985). Where penal statutes are concerned, however, the rule of strict construction applies. The rule of strict construction of penal statutes against the State and for the accused is ' "not much less old than construction itself." ' *State v. Trudell*, 243 Kan. 29, 34, 755 P.2d 511 (1988). We may not give a different meaning to a word in a criminal statute than the word usually possesses. The word should not be given a meaning which leads to uncertainty or confusion if it is possible to construe it otherwise. 243 Kan. at 34. Words in common usage are to be given their natural and ordinary meaning. *State v. Magness*, 240 Kan. 719, 721, 732 P.2d 747 (1987).

"Therefore, in the case at bar, K.S.A. 1987 Supp. 8-1001(f)(1)(E) must be construed against the State and in favor of defendant." *State v. Kelly*, 14 Kan. App. 2d 182, 185-86, 786 P.2d 623 (1990).

The appellant simply asserts that *State v. Kelly* is wrong and that we should not apply it. We disagree. We consider *Kelly* to be well reasoned, and it is the law of this state unless and until overturned by our Supreme Court. In fact, *Kelly* was only recently cited as authority by the Supreme Court in *State v. Luft*, 248 Kan. 911, 811 P.2d 873 (1991).

The law, as set forth in *Kelly*, requires us to apply the rule of strict construction to the statute in question. In doing so, we must construe it against the appellant and in favor of the appellee.

The rule of strict construction and prior decisions of our Supreme Court leave no basis to argue that somehow the notices in the statute are not mandatory. In *State v. Doeden*, 12 Kan. App. 2d 245, 738 P.2d 876, *rev. denied* 242 Kan. 904 (1987), this court concluded that the language of 8-1001 was somehow directory rather than mandatory. This decision was overruled by

the Supreme Court in *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 212-13, 755 P.2d 1337 (1988), wherein the court held:

"The statute in question clearly requires that certain procedures shall be followed and certain notices shall be given to a defendant arrested for driving under the influence. K.S.A. 1985 Supp. 8-1001(f) was enacted as part of a comprehensive revision of the statutes pertaining to driving under the influence of alcohol or drugs. The language of the statute is clearly mandatory. . . . We conclude *the notice provisions of K.S.A. 1985 Supp. 8-1001(f) are mandatory and not merely directory. The holding in Doeden to the contrary is overruled.* The holding of the Court of Appeals in this case that the statute is directory and not mandatory is erroneous." (Emphasis added.)

The decision in *Barnhart* was reaffirmed in *State v. Luft*, 248 Kan. 911, wherein Syl. ¶ 1 states: "The notice provisions of K.S.A. 1990 Supp. 8-1001(f) are mandatory and not merely directory."

It is obvious from the decisions cited and the language of the statute that the notices set forth in K.S.A. 1990 Supp. 8-1001(f)(1) *must* be given. There is no room for omission or error. The Supreme Court in *Barnhart* indicated that the notices need not be given in the exact words of the statute. The court said that "substantial compliance" would suffice and that: "To substantially comply with the requirements of the statute, a notice must be sufficient to advise the party to whom it is directed of the essentials of the statute." 243 Kan. at 213.

In *Barnhart*, the notice advised the appellant that he had the right to consult with an attorney after taking the test and that he had the right to have additional testing done "as soon as possible and as available." The literal wording of the statute required the individual to be advised that additional testing *should* be done as soon as possible. On appeal, Barnhart argued that omission of the word "should" from the notice given rendered that notice erroneous. The court held that the notice as given amounted to substantial compliance since it advised the appellant of the right to additional testing. The court felt the notice as given did not mislead the appellant and conveyed the essentials of the statute.

We are unable to conclude that the notice as given in the case before us was in substantial compliance with 8-1001(f)(1)(D). That section of the statute was designed to advise a party of the specific

consequences of refusing testing. It states that, not only is the party to be advised that his or her license will be suspended, it requires that he or she be told the exact period of time the suspension will run. Specifically, according to that provision of the statute, the individual is to be advised that, if testing is refused, the individual's license will be suspended "for at least one year." In the instant matter, the appellee was advised that her license would be suspended for at least 180 days. The warning given did convey the impression that a refusal of testing would result in a suspension of the license. However, the legislature has mandated more than simply an advisory that the license will be suspended. The legislature has mandated notification of the exact period of that suspension. We conclude that the words "at least 180 days" do not convey the impression that the actual period of suspension will be "at least one year." The notices given to the appellee in the instant matter were not in "substantial compliance" with the notice required. A suspension for one year is more than twice as long as one for 180 days. An individual might find a suspension of 180 days acceptable, but reject the risk of a suspension of one year. The notice of a 180-day suspension does not convey an accurate impression of the actual risk to the individual of refusing the testing. An accurate and precise notice of that risk is required by statute.

The mandatory warnings were not given in this case. The question is what effect that has on the State's ability to suspend a driver's license for refusing testing.

In a criminal case where the defendant is being prosecuted for DUI, the sanction for failing to give all of the mandatory notices is suppression of the results of the blood-alcohol test. This was first decided in *State v. Kelly*, 14 Kan. App. 2d 182, and later reaffirmed by the Supreme Court in *State v. Luft*, 248 Kan. 911. In neither of these cases, however, did the court deal with the failure of notice followed by a suspension of a driver's license for failing to submit to testing.

These criminal cases teach us that there must be some sanction imposed when the State fails to comply with the mandatory notice requirements of 8-1001(f)(1). The application of such a sanction is necessary to insure compliance with the law. If there were no adverse results to the State of Kansas for noncompliance with the

notice provisions, there would be little value in the legislature mandating the giving of such notices. Indeed, the United States Supreme Court has indicated on several occasions that the purpose of the exclusionary rule is to deter police misconduct. See *United States v. Leon*, 468 U.S. 897, 918-19, 87 L. Ed. 2d 677, 104 S. Ct. 3405 (1984). In Kansas, we have adopted an exclusionary rule to insure the giving of the mandatory notices ·in criminal cases and to deter police misconduct in failing to give those notices. Reasoning by analogy, something akin to that must be employed in cases involving the suspension of a driver's license.

We believe that the rule announced in *Dewey v. Kansas Dept. of Revenue*, 11 Kan. App. 2d 72, 75, 713 P.2d 490 (1986), is applicable to the instant matter. In *Dewey*, the Department of Revenue suspended Dewey's driver's license for failure to submit to testing. The statute required that the "chemical test refusal reports" had to be "verified on oath." We found that this mandatory requirement was not followed. We held that the failure to follow the mandatory requirement of verifying the chemical test refusal report on oath deprived the Department of Revenue of jurisdiction to suspend the driver's license: "In this case; since the uncontroverted evidence established the refusal report was not in fact sworn to, the district court erred in failing to rule that the Division had no jurisdiction to suspend Dewey's privileges granted by the issuance· of his driver's license." 11 Kan. App. 2d at 75.

It is not important whether we label the consequences of failure to comply with 8-1001 as jurisdictional. What is important is that we assure compliance with that statute by applying an appropriate sanction for the State's failure to do so. In this instance, we hold that the failure to comply with and give all of the notices required by K.S.A. 1990 Supp. 8-1001(f)(1) divests the State of the authority to suspend a driver's license for refusal to undergo testing. This rule is consistent with the exclusionary rule applied in criminal cases since it is designed to ensure compliance with ·the law and prohibits the State from taking advantage of its failure to deliver mandated warnings.

The appellant argues that we should require the appellee to shoulder an additional burden and require her to prove that she

was prejudiced by the failure of the State to give the required notices. This we decline to do. It seems utterly inconsistent with the rule of strict construction to read into the statute a requirement that the citizen must show prejudice to impose a sanction against the State because it did not follow mandated notice procedures. The statute is to be strictly construed in favor of the appellee and against the appellant. The rule of strict construction would be vitiated by reading into the statute a required showing of prejudice. The legislature has seen fit to mandate the giving of very clear and very specific notices. The failure of the State to give those notices is prejudicial to the citizen in and of itself.

There is some suggestion in *Barnhart* that a showing of prejudice could be required. We read that language as dicta and do not consider it as binding. In addition, at best, *Barnhart* indicates that a showing of prejudice may be necessary to prevent the State from taking advantage of "substantial compliance" with the statute. The instant case is different factually from *Barnhart*. There was no substantial compliance with the statute, and the language in *Barnhart* is inapplicable to the instant matter.

Once again, we reason by analogy from the criminal decisions cited in this opinion. We can discern no requirement beyond a simple showing that required notices were not given to suppress the results of a blood-alcohol test in a DUI prosecution. See *State v. Luft*, 248 Kan. 911. We believe the same rule should apply in the situation now before this court. We hold that proof that the State failed to follow the mandates of K.S.A. 1990 Supp. 8-1001(f)(1) is sufficient, standing alone, to require the reversal of a driver's license suspension for failure to submit to testing. No further showing of prejudice is required.

The appellant finally argues that the appellee had a prior DUI diversion. It points out that, under K.S.A. 1990 Supp. 8-1001(f)(1)(F), one who is the subject of a prior DUI diversion will have driving privileges suspended for "at least one year" for refusing testing. There is no question but that the appellee was given this notice. Thus, the appellant argues that this notice given to the appellee basically "makes up" for the failure to give the notice discussed earlier in this opinion.

We do not reach the merits of this argument. In *Angle v. Kansas Dept. of Revenue*, 12 Kan. App. 2d 756, 757, Syl. ¶¶ 7,

8, 758 P.2d 226, *rev. denied* 243 Kan. 777 (1988), we held that an issue not raised at the administrative hearing may not be raised for the first time during de novo review or on appeal. Although the record of the administrative hearing is quite sketchy, we see no indication that that point was ever raised by the appellant. The appellee assures us that it was not raised, and the appellant has not shown that it was. As a result, we will not consider that issue for the first time on appeal.

The record at the de novo review by the district court is much easier to follow. We have examined that record and find that no evidence of a prior diversion agreement was ever introduced by the appellant. The district court journal entry recites that, at the trial of this matter, the appellant rested without offering any evidence. There is simply nothing in the record to support the argument submitted by the appellant. We would point out that the issue is not raised in the answer filed by the appellant. We note that the appellant filed a request for admissions and set forth 11 different facts which the appellee was asked to admit or deny. We have examined those requests for admission, and the appellee was not asked to admit or deny that she was the subject of a prior diversion agreement. The law is clear that it is the duty of an appellant to present an appellate record which supports the positions which it espouses. *Plummer Development, Inc. v. Prairie State Bank*, 248 Kan. 664, Syl. ¶ 4, 809 P.2d 1216 (1991). This record does not do so on the issue attempted to be raised by the appellant, and we find that we are unable to consider that issue for the reasons stated.

We affirm the decision of the district court and hold that the appellant, under the facts shown, had no authority to suspend the driver's license of the appellee.

Affirmed.