IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,116

NATHAN A. JARVIS,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant.*

SYLLABUS BY THE COURT

1.

On judicial review of a hearing officer's order suspending a driver's license, K.S.A. 2019 Supp. 8-1020(p) grants a court the authority to consider and determine any constitutional issue, including the lawfulness of the law enforcement encounter that led to the suspension. And under K.S.A. 2019 Supp. 8-1020(o) through (q) a court may set aside a driver's license suspension order if the driver meets the burden of establishing the encounter was unlawful.

2.

The record in this appeal provides substantial competent evidence supporting the district court's conclusion that a law enforcement officer lacked reasonable suspicion to initiate a traffic stop that led to the driver's license being suspended. Because the stop was unlawful, the district court did not err in setting aside the suspension.

Review of the judgment of the Court of Appeals in 56 Kan. App. 2d 1081, 442 P.3d 1054 (2019). Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed October 9, 2020. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

1

*Joanna Labastida, Adam D. King, and Ted E. Smith,* of Kansas Department of Revenue, were on the briefs for appellant.

*Sheena Foye,* of Wyrsch Hobbs & Mirakian, P.C., of Kansas City, Missouri, was on the brief for appellee.

*Adam D. Stolte,* of Stolte Law, LLC, of Overland Park, was on the brief for amici curiae Kansas Association of Criminal Defense Lawyers and National College of DUI Defense.

The opinion of the court was delivered by

LUCKERT, C.J.: In this appeal, we interpret and apply K.S.A. 2019 Supp. 8-1020(p). Among other things, that provision identifies issues a court can consider when reviewing the validity of an administrative order suspending a driver's license because a driver failed or refused a blood alcohol test. The question presented is whether a court can set aside a driver's license suspension because the suspension flows from a law enforcement officer's unlawful seizure of the driver.

We hold that, on judicial review under K.S.A. 2019 Supp. 8-1020(p), a court may "consider and determine any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter." And under K.S.A. 2019 Supp. 8-1020(o) through (q) a court may set aside a driver's license suspension order if the driver meets the burden of establishing the encounter was unlawful.

## FACTS AND PROCEDURAL BACKGROUND

After following Jarvis' vehicle, a law enforcement officer initiated a traffic stop. The officer could smell alcohol on Jarvis, and he observed that Jarvis had bloodshot eyes.

2

The officer administered field sobriety tests and then, when Jarvis exhibited signs of intoxication, arrested Jarvis for driving under the influence.

At the police station, the officer read and presented a written implied consent advisory that informed Jarvis his driver's license would be suspended if he failed or refused a blood alcohol test. Jarvis refused to provide a breath sample, and the officer prepared the DC-27 form that certified Jarvis' test refusal and notified Jarvis his driver's license was suspended.

Jarvis administratively appealed the suspension. An administrative hearing officer affirmed the suspension, and Jarvis petitioned for de novo review by the Johnson County District Court. A district court judge conducted an evidentiary hearing and ultimately concluded the officer's testimony was not credible, the officer lacked the reasonable suspicion necessary to justify the traffic stop, and the officer's seizure of Jarvis was unlawful. The judge interpreted K.S.A. 2019 Supp. 8-1020(p) to allow him to set aside the suspension based on his determination that the law enforcement encounter was unlawful.

KDR timely appealed the reversal of the suspension order to the Court of Appeals. In a published opinion, the Court of Appeals affirmed the district court. *Jarvis v. Kansas Dept. of Revenue*, 56 Kan. App. 2d 1081, 1098, 442 P.3d 1054 (2019). KDR then timely petitioned for review. This court granted review and has jurisdiction under K.S.A. 20-3018(b) (petition for review of Court of Appeals decision).

ANALYSIS

We begin our analysis by deciding the legal question of whether K.S.A. 2019 Supp. 8-1020 allows a court to set aside a driver's license suspension based on an

3

unlawful law enforcement encounter. After determining that issue, we will examine the district court's ruling that Jarvis was stopped unlawfully because the law enforcement officer lacked a reasonable suspicion that Jarvis had committed a traffic offense.

The parties' arguments about a court's power to set aside an administrative order focus on K.S.A. 2019 Supp. 8-1020(p) and amendments to that provision enacted in 2016. Subsection (p) is one of three subsections of K.S.A. 2019 Supp. 8-1020 that explicitly apply when a court reviews a driver's license suspension order. Those subsections—(o) through (q)—state, with the 2016 amendment emphasized:

> "(o) The licensee may file a petition for review of the hearing order pursuant to K.S.A. 8-259, and amendments thereto. Upon filing a petition for review, the licensee shall serve the secretary of revenue with a copy of the petition and summons. Upon receipt of a copy of the petition for review by the secretary, the temporary license issued pursuant to subsection (b) shall be extended until the decision on the petition for review is final.

> "(p) Such review shall be in accordance with this section and the Kansas judicial review act. To the extent that this section and any other provision of law conflicts, this section shall prevail. The petition for review shall be filed within 14 days after the effective date of the order. Venue of the action for review is the county where the person was arrested or the accident occurred, or, if the hearing was not conducted by telephone conference call, the county where the administrative proceeding was held. The action for review shall be by trial de novo to the court and the evidentiary restrictions of subsection (l) shall not apply to the trial de novo. The court shall take testimony, examine the facts of the case and determine whether the petitioner is entitled to driving privileges or whether the petitioner's driving privileges are subject to suspension or suspension and restriction under the provisions of this act. *Notwithstanding K.S.A. 77-617, and amendments thereto, the court: (1) May also consider and determine any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter, even if such issue was not raised before the agency; and (2) shall also consider and determine*

4

*any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter, if such issue is raised by the petitioner in the petition for review, even if such issue was not raised before the agency.* If the court finds that the grounds for action by the agency have been met, the court shall affirm.

"(q) Upon review, the licensee shall have the burden to show that the decision of the agency should be set aside." (Emphasis added.) K.S.A. 2019 Supp. 8-1020; L. 2016, ch. 69, § 2.

To answer the issue of whether the Legislature intended this language to provide a basis for setting aside a suspension based on an unlawful law enforcement encounter, we must interpret K.S.A. 2019 Supp. 8-1020(o) through (q). Issues of statutory interpretation present questions of law to which we apply an unlimited standard of review. This means we give no deference to the district court's or the Court of Appeals' interpretation of the statute. *State v. Fowler*, 311 Kan. 136, 139, 457 P.3d 927 (2020); *State v. Gross*, 308 Kan. 1, 7, 417 P.3d 1049 (2018).

All Kansas courts use the same starting point when interpreting statutes: The Legislature's intent controls. To divine that intent, courts examine the language of the provision and apply plain and unambiguous language as written. If the Legislature's intent is not clear from the language, a court may look to legislative history, background considerations, and canons of construction to help determine legislative intent. *Gross*, 308 Kan. at 10.

With those rules in mind, we turn to consideration of the parties' arguments, which we have grouped into three categories for purposes of our analysis: (1) KDR arguments as to why the lawfulness of the law enforcement encounter is not within the scope of a court's review of an administrative suspension order; (2) the basis for KDR's assertion that K.S.A. 2019 Supp. 8-1020 does not provide a remedy for an unlawful law

enforcement encounter; and (3) KDR's contention the exclusionary rule does not apply to driver's license suspension proceedings and the Court of Appeals' analysis creates bad policy. None of KDR's arguments persuade us.

1.      K.S.A. 2019 Supp. 8-1020

The parties in this and another appeal, *State v. Whigham*, 312 Kan. ___, ___ P.3d ___ (No. 117,043, this day decided), have framed many of their arguments by discussing how, if at all, a 2016 amendment to K.S.A. 2019 Supp. 8-1020(p) affected various holdings in *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015). This framing has confused the discussion in many ways because *Martin*'s holdings address issues that do not perfectly align with the analytical steps in this case. For example, *Martin* discussed whether the *judicial* remedy of suppressing evidence through use of the exclusionary rule is available in driver's license suspension proceedings, but the 2016 amendment relates to *statutorily* authorized remedies. To explain the significance of the difference between *Martin*'s focus and the 2016 amendment to subsection (p), we begin by summarizing the holdings in *Martin*.

In *Martin*, this court held that K.S.A. 8-1020(h)(2) provides an exclusive list of issues an administrative hearing officer can consider when a driver appeals from a law enforcement officer's notice of suspension. And that list does not include the lawfulness of the law enforcement encounter. *Martin*, 285 Kan. at 631-32. *Martin* also noted that "we have repeatedly recognized that administrative agencies are not empowered to decide constitutional questions; courts are." 285 Kan. at 632. Thus, the question of the lawfulness of the law enforcement encounter was not a statutory basis for invalidating the suspension order even if the encounter violated constitutional protections.

6

The *Martin* court then turned to the constitutional question raised by the driver: Whether the officer lacked a reasonable suspicion to seize the driver and thus lacked a lawful basis for stopping the vehicle. The *Martin* court first noted that a traffic stop is generally a seizure implicating the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights in a criminal case. And it "is not magically converted to a 'nonseizure' when it leads to a civil or administrative rather than a criminal proceeding. Fourth Amendment and § 15 implications transcend this boundary because those provisions delineate rights that attach to individuals in either circumstance." 285 Kan. at 636. Then, given the facts of the case, the court determined the officer lacked constitutional authority to seize the driver. 285 Kan. at 638-39.

The *Martin* court next considered possible remedies for the unconstitutional seizure. It began with the question of whether the statutory remedy of invalidating and setting aside the suspension order was available. Noting that courts dealing with unlawful suspension orders often use this remedy, the court distinguished those cases, citing two examples. 285 Kan. at 639 (discussing *Ostmeyer v. Kansas Dept. of Revenue*, 16 Kan. App. 2d 639, 827 P.2d 780 [1992]; *Meigs v. Kansas Dept. of Revenue*, 16 Kan. App. 2d 537, 825 P.2d 1175 [1992]). The point of distinction was that those cases involved "a violation of a mandatory provision of the Implied Consent Law by an officer of the State" rather than a nonstatutory, constitutional violation. The statutory remedy—invalidation of the order—did not cover nonstatutory grounds, the court reasoned. 285 Kan. at 639.

Because no statutory remedy was available, the *Martin* court turned to the driver's alternative argument that the court should invoke the exclusionary rule and suppress the illegally obtained evidence. "The exclusionary rule is a judicially created remedy, designed to deter the government from engaging in unconstitutional conduct." *Martin*, 285 Kan. at 640; see *Illinois v. Krull*, 480 U.S. 340, 347, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987); *State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2010). It applies only

7

after courts weigh whether the "'its deterrence benefits outweigh its "substantial social costs."'" 285 Kan. at 640 (quoting *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 363, 118 S. Ct. 2014, 141 L. Ed. 2d 344 [1998]). After considering those factors, a majority of the *Martin* court held the rule did not apply to driver's license suspension proceedings. *Martin*, 285 Kan. at 646.

Here, KDR asks us to leap over the preliminary analytical steps of *Martin* and jump to consideration of whether the 2016 amendment to subsection (p) changed *Martin*'s holding about the availability of the exclusionary rule in driver's license suspension hearings. Rather than make that leap, Jarvis asks us to begin at the first analytical steps of whether the amendment (1) allows a court to consider the constitutionality of the law enforcement encounter and (2) creates a statutory remedy that essentially moots the need to apply the exclusionary rule. He contends the 2016 amendment explicitly expanded the issues a district court could, and in some cases shall, consider when reviewing a hearing officer's driver's license suspension order. Specifically, a court can now consider "any constitutional issue, including . . . the legality of the law enforcement encounter." And he argues that the amendment gives a court the authority to invalidate the suspension order if a constitutional violation occurred. KDR disagrees.

Jarvis validly points out that an analysis of the effect of the 2016 amendment on *Martin*'s holdings requires walking the same analytical path of examining (1) the grounds for judicial review allowed by the statute and (2) the remedies it affords. Only then do we turn to KDR's arguments regarding *Martin*'s holding about the inapplicability of the exclusionary rule in driver's license suspension hearing and the impact on policy.

8

1.1.  *K.S.A. 2019 Supp. 8-1020 adds an issue for court review.*

As to the grounds for judicial review, KDR does not dispute that the 2016 amendments to K.S.A. 2019 Supp. 8-1020(p) allow a court to "consider and determine" constitutional issues, including the lawfulness of the law enforcement encounter. But KDR argues this language is procedural only and has no practical effect other than the "value in having judicial determination on such issues for law enforcement officers in the conduct of their duties." In other words, under KDR's interpretation, a district court may consider constitutional violations related to the law enforcement encounter, but those violations cannot lead to reversal of the driver's license suspension. Instead, courts would simply advise law enforcement officers whether they passed or failed a constitutional test. We disagree.

The overall framework of K.S.A. 2019 Supp. 8-1020(o), (p), and (q) requires courts to consider and apply the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. The first sentence of subsection (o) indirectly incorporates the KJRA by referencing K.S.A. 8-259:  "The licensee may file a petition for review of the hearing order pursuant to K.S.A. 8-259." K.S.A. 2019 Supp. 8-259, in turn, allows for judicial review of an order of suspension and provides that the court will conduct the review under the KJRA. Subsection (p) echoes subsection (o) by repeating that the KJRA applies to the court's review, this time stating so explicitly without routing the reader through K.S.A. 2019 Supp. 8-259 to get to the KJRA.

As the name Kansas Judicial Review Act implies, courts use the KJRA when reviewing agency actions and, if the court finds an error in the agency action, in providing a remedy. Nothing in the KJRA allows courts to issue advisory opinions to the executive branch—the only outcome KDR argues can result from the 2016 amendment to subsection (p). Instead of making courts advisory bodies, the KJRA empowers courts to

9

substantively review administrative actions, determine the validity of the action, and provide a remedy if the agency acted erroneously. See K.S.A. 77-621 ("[1] The burden of proving the invalidity of agency action is on the party asserting invalidity; and [2] the validity of agency action shall be determined in accordance with the standards of judicial review provided in this section."); K.S.A. 77-622 (allowing courts reviewing agency action to award damages and provide "other appropriate relief," including setting aside an administrative order).

As part of this framework, K.S.A. 2019 Supp. 8-1020(p) defines the issues a court can consider when reviewing the administrative suspension order. Before 2016, only one sentence in subparagraph (p) addressed the potential issues: "The court shall take testimony, examine the facts of the case and determine whether the petitioner is entitled to driving privileges or whether the petitioner's driving privileges are subject to suspension or suspension and restriction under the provisions of this act." The sentence ends with five important words: "under the provisions of this act." Those words conveyed that a court's review linked back to subsection (h), which provides an exclusive list of issues the administrative hearing officer can consider. See *Martin*, 285 Kan. at 631-32. But after the 2016 amendment, that sentence is followed with the addition of another issue courts can—and in some cases shall—consider: Courts are to "consider and determine any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter."

The words "[n]otwithstanding K.S.A. 77-617" introduce the directive for courts to consider constitutional issues. These words counter an argument advanced by KDR. It argues that if the Legislature intended to substantively expand a court's scope of review— or at least if it wanted to reconcile the new issue with the phrase "under the provisions of this act"—it needed to add constitutional issues to the law enforcement officer's certification and to the exclusive list of issues a hearing officer can consider. In part, this

10

argument builds on a point made in *Martin*: Courts conducting judicial review of an agency action cannot usually consider issues not raised before the agency, including constitutional issues. *Martin*, 285 Kan. at 634 ("[R]aising any potentially controlling constitutional issue at the time of the administrative hearing [is] the wise course for a driver who wishes to preserve the issue for judicial review in the district court and beyond.").

But the new words in subsection (p) stating, "[n]otwithstanding K.S.A. 77-617," convey it does not matter that the constitutional issues were not part of the law enforcement officer's certification or the hearing officer's review. But for those words, K.S.A. 77-617 would apply and a court would not have authority under the act to consider the constitutional issue. And the situation would be as discussed in *Martin*: The statute would not have made compliance with the Constitution a statutory requirement for a valid suspension order. 285 Kan. at 639. Here, however, the Legislature provided an exception through the 2016 amendment that allows the petition to include any constitutional issue and allows the court to "consider and determine" the issue even if the petition does not include the issue. Under the current statute, a failure to comply with the Constitution becomes a violation subject to review and remedy under the act. See *Ostmeyer*, 16 Kan. App. 2d 639; *Meigs*, 16 Kan. App. 2d 537.

The exception allowing a court to consider the constitutional issue follows the directive that the court will "examine the facts of the case and determine whether the petitioner is entitled to driving privileges or whether the petitioner's driving privileges are subject to suspension or suspension and restriction." K.S.A. 2019 Supp. 8-1020(p). Had the Legislature provided only that a court "may" consider constitutional issues, KDR's arguments might have been more persuasive. But the Legislature directed that a court "shall" consider constitutional issues raised in the driver's petition for review. The two

11

sentences, when read together, convey a legislative intent to make the constitutional issue a substantive basis for invalidating the administrative order.

KDR, though, also complains the provision does not explicitly declare that constitutionality or legality of the stop is an allowable ground for review of the agency action in the usual way courts "review" administrative actions under the KJRA. Apparently struggling to reconcile the language of the 2016 amendment with its view that the provision is simply procedural, KDR argues that "[o]ne could speculate that there is value in having judicial determination on such issues for law enforcement officers in the conduct of their duties. But ultimately that is speculation." As KDR goes on to point out, courts do not speculate as to intent. And KDR concedes that, if read this way, the provision would have no practical effect—in other words, it would be meaningless. But KDR argues that "[a]ny objection that this makes the provision 'meaningless' is ultimately an objection against the analysis of *Martin* and its progeny." In this context, KDR cites *Kingsley v. Kansas Dep't of Revenue*, 288 Kan. 390, 396, 204 P.3d 562 (2009), in which we observed that a driver whose license has been suspended "may raise Fourth Amendment claims, but such claims have no practical effect."

Through this argument, KDR suggests the language of subsection (p) is ambiguous. Let us assume for the sake of argument that it is and that the reference to the KJRA does not clearly and unambiguously allow courts to "review," as that word is used in the KJRA, the constitutionality of the law enforcement encounter. When a statute is ambiguous, we turn to rules of statutory construction, *Gross*, 308 Kan. at 10, and under those rules KDR's point would still fail. We reach this conclusion for at least four reasons.

First, courts construing statutes presume the Legislature does not intend to enact meaningless legislation. *State v. Keel*, 302 Kan. 560, 574, 357 P.3d 251 (2015); *Milano's*

12

*Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 501, 293 P.3d 707 (2013). Read the way KDR proposes, the 2016 amendment would be meaningless.

Second, the legislative history reveals an intent to authorize courts to consider constitutional issues the hearing officer did not review and to make that review "meaningful" by allowing the court to invalidate the administrative order if it flows from an unconstitutional law enforcement encounter. Upon the House of Representatives' request for a study of the proposed legislation that led to the 2016 amendments, a Judicial Council committee observed in its report that simply allowing a driver to raise a constitutional issue was "virtually meaningless." The committee advocated that "licensees should be allowed a meaningful opportunity to challenge the legality of a traffic stop, which the Committee determined should be decided by the district court and not the administrative hearing officer." Report of Judicial Council Criminal Law Advisory Committee on House Bill 2289, 4, 7 (December 4, 2015).

Third, when the Legislature revises an existing law, courts presume the Legislature intended to change the law as it existed prior to the amendment. *State v. Preston*, 287 Kan. 181, 184, 195 P.3d 240 (2008). And courts presume the Legislature acts with full knowledge of existing law. *State v. Henning*, 289 Kan. 136, 144-45, 209 P.3d 711 (2009). KDR's construction of the statute would result in no change in the law; it would instead retain the effect of *Martin*'s holdings, providing no remedy for a constitutional violation. We presume the Legislature intended to make the provision meaningful and to change the law.

Finally, we note that KDR's argument asks us to contort the plain language to arrive at an unconstitutional meaning. Kansas courts lack the constitutional authority to issue advisory opinions, whether about the constitutionality of an officer-citizen encounter or anything else. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 888-89, 179

13

P.3d 366 (2008). Yet a court's consideration and determination of the lawfulness of a law enforcement encounter would serve only as advice to law enforcement officers under KDR's interpretation of the 2016 amendment. Although our "duty to give effect to the plain language of an unambiguous statute is not diluted just because that effect renders the statute unconstitutional," here, we are not using the doctrine of constitutional avoidance to change the meaning of unambiguous statutory language. *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 367, 361 P.3d 504 (2015). We presume the Legislature intends to pass constitutional legislation and cite the constitutional issue for the sole purpose of pointing out the fallacy of KDR's argument. See *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 (2009) (courts presume statute to be constitutional, with all doubts resolved in favor of validity).

In other words, while we determine that the plain meaning of the provision defeats KDR's argument that the Legislature did not intend to create a new ground for review of a suspension order, application of rules of construction leads to the same conclusion.

In summary, contrary to KDR's argument, subsection (p) is more than a procedural statute. It defines the issues a court may consider when reviewing an order of suspension and, after 2016, it authorizes a determination of the constitutionality of the law enforcement encounter even if the driver did not raise constitutionality in the petition for review. It also provides the court "shall" consider a constitutional issue raised in the petition for review. And when it says the court will "determine" the issue it echoes the prior use of "determine" that directs the court to either affirm the suspension order or set it aside. See, e.g., K.S.A. 2019 Supp. 8-1020(p) ("The court shall take testimony, examine the facts of the case and determine whether the petitioner is entitled to driving privileges or whether the petitioner's driving privileges are subject to suspension or suspension and restriction under the provisions of this act.").

14

We thus hold that, on petition for review asking for the invalidation of a suspension order, a court can consider whether the order arises from an unlawful law enforcement encounter.

### 1.2.    *An unlawful stop is a basis for setting aside a suspension order.*

The overall framework of subsections (o), (p), and (q) of K.S.A. 2019 Supp. 8-1020 also undercuts KDR's argument that setting aside the suspension order is not a permissible remedy for an unlawful traffic stop. To support this argument, KDR asserts no language explicitly authorizes a court to set aside the suspension if the court determines the law enforcement encounter was unlawful.

Contrary to this view, subsections (o) through (q) contain explicit provisions allowing invalidation of the order after determination of an issue that is subject to the court's review. Returning to the first sentence of subparagraph (o), through its incorporation of K.S.A 2019 Supp. 8-259, it defines the type of relief that can result from judicial review of a suspension order: "The court shall take testimony, examine the facts of the case and determine whether the petitioner is entitled to driving privileges or whether the petitioner's driving privileges are subject to suspension, cancellation or revocation." K.S.A. 2019 Supp. 8-259(a). Subsection (p) also provides for a trial de novo and repeats the determination the court is to make: "The court shall take testimony, examine the facts of the case and determine whether the petitioner is entitled to driving privileges or whether the petitioner's driving privileges are subject to suspension or suspension and restriction under the provisions of this act." And subsection (q) underscores that the appropriate remedy is to set aside KDR's administrative order if Jarvis carries his burden because it provides: "Upon review, the licensee shall have the burden to show that the decision of the agency *should be set aside*." (Emphasis added.)

15

Through this language, the Legislature provided a practical effect—the suspension order stays in place or it is set aside.

KDR also argues a district court has remedies available other than reversal. It points to the various remedies available under the KJRA through K.S.A. 77-622(b), which gives a district court authority to grant a wide range of "other appropriate relief." One type of appropriate relief is a judgment that sets aside an administrative order. Because subsections (p) and (q) allow for the remedy of setting aside the suspension—the remedy here imposed by the district court—we need not decide whether other remedies are available to a district court. For our analysis today, the fact the Legislature provided remedies if an unconstitutional encounter occurs—whether the remedy arises from subsection (q) alone or along with K.S.A. 77-622(b)—highlights the intent a court do more than advise and makes clear that the district court judge could set aside Jarvis' suspension if Jarvis met his burden of proof.

We thus conclude K.S.A. 2019 Supp. 8-1020 provides a remedy of setting aside the suspension order for any reason within a court's review.

1.3. *KDR's arguments about the exclusionary rule and policy are unpersuasive*.

KDR advances two more arguments.

In one, KDR embraces the analysis of the Court of Appeals panel in *Whigham v. Kansas Dept. of Revenue*, No. 117,043, 2018 WL 1884742 (Kan. App. 2018) (unpublished opinion) (affirming district court's judgment upholding suspension), *rev'd and remanded* 312 Kan. ___, ___P.3d ___1602 (this day decided). There, Patrick Whigham argued a district court judge reviewing his driver's license suspension order erred by not suppressing evidence of his test refusal. He contended the 2016 amendments

16

to subsection (p) of K.S.A. 2019 Supp. 8-1020 legislatively overturned the *Martin* holding that the exclusionary rule cannot be used in a driver's license administrative proceeding.

The *Whigham* Court of Appeals panel rejected that argument. It noted the lack of any "declarative language (allowing the suppression of illegally seized evidence)" in subsection (p). The panel reasoned that, had it been "the Legislature's intent to overrule the *Martin* holding or to allow the suppression of illegally seized evidence in administrative suspension hearings, the Legislature could have clearly expressed this intent." 2018 WL 1884742, at *3.

Even if the *Whigham* panel correctly concluded the 2016 amendment does not explicitly address the exclusionary rule, that does not analytically impact our holding that a court can invalidate a suspension order because of an unlawful law enforcement encounter. 285 Kan. at 639-40.

In large part that is because the driver in *Martin* raised the exclusionary rule as an alternative route for relief if the court held the statute did not grant authority to invalidate the order based on the unconstitutionality of the underlying law enforcement encounter. And the *Martin* court turned to the alternative *judicial and constitutional* exclusionary rule argument only after first holding that the hearing officer and the court lacked *statutory* authority under K.S.A. 2019 Supp. 8-1020(p) to invalidate a suspension order because of an unconstitutional law enforcement encounter. 285 Kan. at 639-40.

Today, we hold that the 2016 amendment to K.S.A. 2019 Supp. 8-1020(p) expresses an intent to give courts authority to review, consider, and determine the constitutionality of the law enforcement encounter. This grant of authority provides access to the *statutory* remedy identified in K.S.A. 2016 Supp. 8-1020(o) through (q) of

17

invalidating the suspension order and setting it aside. In this way, the 2016 amendment statutorily provided a remedy—a remedy available during court review—without need to resort to the constitutional exclusionary rule.

Finally, KDR contends allowing courts to consider the lawfulness of the law enforcement encounter is contrary to the public policy of getting impaired drivers off Kansas roadways. We simply note that "'questions of public policy are for legislative and not judicial determination, and where the legislature does so declare, and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for that body and not for the courts.'" *State v. Spencer Gifts*, 304 Kan. 755, 765, 374 P.3d 680 (2016) (quoting *State ex rel. v. Kansas Turnpike Authority*, 176 Kan. 683, 695, 273 P.2d 198 [1954]).

Our role is to interpret the plain language of K.S.A. 2019 Supp. 8-1020. Having done so, we hold that on judicial review under K.S.A. 2019 Supp. 8-1020(p), a court may consider any constitutional issue, including the lawfulness of the law enforcement encounter. And under K.S.A. 2019 Supp. 8-1020(q) a court may set aside a driver's license suspension order if the driver meets the burden of establishing the encounter was unlawful.

2.     *No Reasonable Suspicion*

Having determined the district court could review the lawfulness of the law enforcement encounter that led to the suspension of Jarvis' license, we turn to KDR's argument that the district court erred in concluding Jarvis met the burden of establishing the encounter was unlawful. The district court held that the law enforcement officer lacked a reasonable suspicion that Jarvis had broken the law and therefore lacked a constitutional basis to seize Jarvis through a traffic stop.

Three fundamental principles frame Jarvis' argument. First, a traffic stop, even one leading to administrative rather than criminal proceedings, is a seizure. *Martin*, 285 Kan. at 636. Second, the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights protect from unreasonable and unlawful searches and seizures. 285 Kan. at 635. Third, to comply with the Fourth Amendment and § 15, the officer conducting the traffic stop must have a reasonable and articulable suspicion that the driver has, is, or will be committing a crime. K.S.A. 22-2402(1); *Terry v. Ohio,* 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Martin*, 285 Kan. at 636. "'"Reasonable suspicion means a particularized and objective basis for suspecting the person stopped is involved in criminal activity. Something more than an unparticularized suspicion or hunch must be articulated."'" *City of Wichita v. Molitor*, 301 Kan. 251, 257, 341 P.3d 1275 (2015) (quoting *State v. Pollman*, 286 Kan. 881, 890, 190 P.3d 234 [2008]). Cumulatively, these principles mean that the law enforcement officer who stopped Jarvis needed a particularized and objective basis for suspecting that Jarvis had committed or was committing a crime, including a traffic offense, or would commit a crime before stopping Jarvis' car. *Martin*, 285 Kan. at 636.

Whether reasonable suspicion exists is a factual determination. The question is not whether the appellate court would have made the same decision, but whether the district court's decision is supported by substantial competent evidence. An appellate court does not reweigh evidence, make witness credibility determinations, or resolve evidentiary conflicts. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). Even if appellate jurists might have made different findings had they been in the position of the district court, an appellate court does not second guess a district court's decision if it hinges on substantial competent evidence and reasonable inferences drawn from that evidence. *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1221, 442 P.3d 1038 (2019); see *State v. Lowery*, 308 Kan. 359, 367, 420 P.3d 456 (2018) ("On appellate review, our

19

deference is not to particular witnesses but to the fact-finder who has resolved an evidentiary conflict.").

Here, the law enforcement officer asserted he held a reasonable suspicion because Jarvis had committed a traffic infraction on his seeing Jarvis weaving in his lane, crossing the center line, and almost hitting a mailbox. The district court judge did not suggest that these could not be legally valid reasons for a stop if supported by a factual basis. But the judge found the officer lacked a factually credible basis for finding a reasonable suspicion for the traffic stop. A review of the record shows that the judge's factual findings are supported by substantial competent evidence.

The judge made these findings:

- The police dashcam video of the incident begins with Jarvis' vehicle on a road with marked lanes. Jarvis legally proceeded through an intersection and onto a road without lane markings. The officer testified that the purported traffic infractions took place on the portion of the road without markings.

- The officer notified dispatch of his intent to make a traffic stop. During this time Jarvis made two turns and properly signaled both times.

- The officer activated the police lights, and Jarvis responded in an appropriate manner, did not excessively brake or jerk his vehicle, and stopped his vehicle.

- Although the officer testified that he witnessed Jarvis weaving and almost hit a mailbox while on the portion of the road without marked lanes, all of which is on the video, the video did not support that testimony. Nor did the officer mention anything about a mailbox in his official and purportedly complete

20

report of the incident. And during the hearing, the officer could not show the court on the video the near-miss of the mailbox.

- Despite being given an opportunity on cross-examination to say that the purported traffic infractions happened before the start of the video, the officer testified that they happened on the portion of the road without marked lanes, all of which is on the video.

Based on these findings, the district court found that the traffic stop was pretextual. The court also found the officer's "observed demeanor and other testimony he gave undermined his credibility on the articulated facts to support his claim of any actual traffic infraction or of any other reasonable suspicion to justify his stop and encounter with the Petitioner." The court then concluded that "[w]ithout the traffic infractions, the Officer articulated no credible reasonable suspicion justifying the stop and initial encounter. Suspicion, in order to be reasonable, must be based upon objective articulated facts. That articulation must not be false. In this case, it is found to be untrue."

The district court judge's conclusion the officer lacked a reasonable suspicion for the arrest is supported by factual findings. And, in turn, the judge's factual findings are supported by substantial competent evidence. Because the stop was unlawful and violated Jarvis' constitutional rights, the district court did not err in setting aside the suspension of Jarvis' driver's license.

We affirm the Court of Appeals decision affirming the district court. We affirm the district court's reversal of the administrative order suspending Jarvis' driver's license.

MICHAEL E. WARD, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Ward was appointed to hear case No. 119,116 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.